UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

In re:                                          )
                                                )
HORIZON RIDGE MEDICAL &                         )     Case No. 12-13906-lbr
CORPORATE CENTER, LLC                           )     Chapter 11
                                                )
                    Debtor.                     )
_____ )

**FIRST AMENDED PLAN OF LIQUIDATION FOR DEBTOR HORIZON RIDGE
MEDICAL & CORPORATE CENTER, LLC**

**BY CREDITOR BANK OF AMERICA, N.A. AS TRUSTEE**

| | |
|---|---|
| DOMINICA C. ANDERSON (SBN 2988) | JOHN ROBERT WEISS |
| BRIAN A. NEIGHBARGER (SBN 11225) | (IL Bar No. 6190335) |
| DUANE MORRIS LLP | (Admitted *Pro Hac Vice*) |
| 100 North City Parkway, Suite 1560 | DUANE MORRIS LLP |
| Las Vegas, NV  89106 | 190 South LaSalle, Suite 3700 |
| Telephone:  702.868.2600 | Chicago, IL  60603 |
| Facsimile:  702.385.6862 | Telephone:  312.499.6700 |
| E-Mail:     dcanderson@duanemorris.com | Facsimile:  312.499.6701 |
|            baneighbarger@duanemorris.com | E-Mail:     jrweiss@duanemorris.com |

Counsel for Bank of America, N.A. as Trustee

Dated:  August 20, 2012[1]  January 6, 2014

[1]  This Plan is identical to the Plan filed at Docket No. 68; however certain portions of text have been put in bold and/or underlined pursuant to the Order of the Bankruptcy Court at Docket No. 107.

DM3\2251374.3 2786503.1

**TABLE OF CONTENTS**

**Page**

ARTICLE I. DEFINED TERMS AND RULES OF INTERPRETATION ..................1
   A.  Defined Terms ..................................................................1
   B.  Rules of Interpretation ........................................................6
ARTICLE II. ADMINISTRATIVE AND PRIORITY CLAIMS (UNCLASSIFIED CLAIMS) ....................................................................7
   A.  Treatment of Administrative Claims ..........................................7
   B.  Treatment of Priority Tax Claims and Other Priority Claims ....................7
   C.  Treatment of Professional Claims ............................................7
ARTICLE III. CLASSIFICATION AND TREATMENT OF ALLOWED CLAIMS AND ALLOWED MEMBERSHIP INTERESTS ............................................7
   A.  Summary ..................................................................7
   B.  Classification and Treatment of Claims and Membership Interests ..............8
   C.  Non-Consensual Confirmation ................................................9
ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ........................9
   A.  The Sale ..................................................................9
   B.  Debtor in Possession ......................................................10
   C.  Debtor Cooperation with the Sale ..........................................10
   D.  Third Parties in Possession of Assets ................................~~10~~11
   E.  United States Trustee Fees ................................................11
   F.  Limitation of Liability of the Plan Administrator and the Plan Proponent ......11
   G.  Term of Injunctions or Stays ..............................................11
ARTICLE V. PROVISIONS GOVERNING DISTRIBUTIONS ..........................11
   A.  General Provisions; Undeliverable Distributions ............................11
   B.  Unclaimed Property ........................................................12
   C.  Manner of Cash Payments Under the Plan ....................................12
   D.  Time Bar to Cash Payments by Check ........................................12
   E.  Compliance with Tax Requirements ..........................................12
   F.  No Payments of Fractional Dollars ..........................................13
ARTICLE VI. DISPUTED CLAIMS ............................................13
   A.  Resolution of Disputed Claims ..............................................13
   B.  Disallowance of Late Claims ................................................13
ARTICLE VII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..................................................................~~13~~14
   A.  Plan Administrator and Existing Contracts and Unexpired Leases ..............~~13~~14
   B.  Rejection of Executory Contracts and Unexpired Leases ......................14
   C.  Rejection Claims ..........................................................14
ARTICLE VIII. ~~EXCULPATION,~~ PRESERVATION OF CAUSES OF ACTION, INJUNCTION, RELEASE, AND RELATED PROVISIONS ..........................14
   A.  ~~Exculpation~~ ..........................................................~~14~~
   ~~B.~~  Preservation of Rights of Action ..........................................~~15~~14
   ~~C~~B.  Release and Injunction ....................................................~~16~~15
ARTICLE IX. RETENTION OF JURISDICTION ..................................17
ARTICLE X. MISCELLANEOUS PROVISIONS ....................................18
   A.  Payment of Statutory Fees ..................................................18
   B.  Modification of Plan ......................................................~~19~~18
   C.  Revocation of Plan ........................................................19
   D.  Successors and Assigns ....................................................19
   E.  Governing Law ............................................................19
   F.  Severability ..............................................................~~20~~19
   G.  Reservation of Rights ......................................................20

i

H.   Section 1146 Exemption.................................................................................20
I.    Section 1125(e) Good Faith Compliance...........................................................2120
J.    Further Assurances......................................................................................21
K.    Filing of Additional Documents.....................................................................21
L.    No Stay of Confirmation Order......................................................................22

DM3\2251374.32786503.1

**FIRST AMENDED PLAN OF LIQUIDATION FOR DEBTOR HORIZON RIDGE MEDICAL & CORPORATE CENTER, LLC**

**BY CREDITOR BANK OF AMERICA, N.A. AS TRUSTEE**

Pursuant to title 11 of the United States Code, Bank of America, N.A., Successor by Merger to LaSalle Bank National Association, as Trustee for the Registered Holders of GMAC Commercial Mortgage Securities, Inc., Commercial Mortgage Pass-through Certificates, Series 2003-C1, acting by and through CWCapital Asset Management LLC, through its counsel, Duane Morris LLP, respectfully submits the following First Amended Chapter 11 Plan of Liquidation for Horizon Ridge Medical & Corporate Center, LLC.

**ARTICLE 1.**

**DEFINED TERMS AND RULES OF INTERPRETATION**

A.    *Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.    "*Administrative Bar Date*" means the first Business Day that is thirty (30) days after the Effective Date, and is the deadline for (i) a holder of an Administrative Claim to file a request with the Bankruptcy Court for payment of such Administrative Claim and (ii) each Professional to file an application for the final allowance of compensation and reimbursement of expenses that each such Professional has already received.

2.    "*Administrative Claim*" means a Claim that has been timely filed before the Administrative Bar Date, for costs and expenses of administration under sections 503(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation,  the actual and necessary costs and expense incurred after the Petition Date of preserving the Estate and operating the business of the Debtor; *provided, however*, that an Administrative Claim that arises under section 503(b)(9) of the Bankruptcy Code shall only be deemed timely filed to the extent such Claim was filed prior to the Claims Bar Date.

3.      "*Allowed*" means, with respect to any Claim or Membership Interest:  (a) a Claim or Membership Interest that has been scheduled by the Debtor in its schedules of liabilities as other than disputed, contingent or unliquidated and as to which the Debtor or other parties-in-interest have not filed an objection; (b) a Claim or Membership Interest that either is not Disputed or has been allowed by a Final Order; or (c) a Claim or Membership Interest that is allowed:  (i) in any stipulation of amount and nature of Claim or Membership Interest executed prior to the Effective Date and approved by the Bankruptcy Court; (ii) in any stipulation with the Plan Administrator of amount and nature of Claim or Membership Interest executed on or after the Effective Date; or (iii) in or pursuant to any contract, instrument, indenture or other agreement assumed by the Plan Administrator.

4.      "*Assets*" means all property of the Debtor and the Estate of any kind or nature as of the Effective Date, and includes, without limitation, all of the Debtor's and the Estate's real property, personal property, tangible property, intangible property, accounts, accounts receivable, goods, equipment, furniture, inventory, chattel paper, documents, instruments, Cash, money, fixtures, improvements, easements, contract rights, general intangibles, rents, insurance proceeds, tax refunds, Causes of Action, internet websites, intellectual property, trademarks, trade names, copyrights, patents, claims and rights of any kind, wherever situated, together with the proceeds thereof including, without limitation, the Sale Proceeds.

5.      "*Avoidance Actions*" means any and all avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of the Debtor or the Estate under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies under sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code.

6.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*, as amended from time to time, and applicable portions of titles 18 and 28 of the United States Code.

7.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Nevada.

8.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, the Local Rules of Bankruptcy Practice of the United States District Court for the District of Nevada, the

Local Rules of Practice for the United States District Court for the District of Nevada, and general orders and chambers procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Case and as amended from time to time.

9.      "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" as that term is defined in Federal Rule of Bankruptcy Procedure 9006(a).

10.      "*Cash*" means legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

11.      "*Causes of Action*" means all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims and crossclaims (including, without limitation, all claims and any avoidance, recovery, subordination or other actions against Insiders and/or any other entities under the Bankruptcy Code, including Avoidance Actions) of any of the Debtor, the Debtor-in-Possession, and/or the Estate against any entity, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative or otherwise and whether asserted or unasserted as of the Effective Date.

12.      "*Chapter 11 Case*" means the bankruptcy case of the Debtor currently pending in the Bankruptcy Court as *In re: Horizon Ridge Medical & Corporate Center, LLC*, Case No. BK-12-13906-lbr.

13.      "*Claim*" means a "claim" against the Debtor as defined in section 101(5) of the Bankruptcy Code.

14.      "*Claims Bar Date*" means August 1, 2012.

15.      "*Class*" means a category of holders of Claims or Membership Interests as set forth in Article III pursuant to section 1122(a) of the Bankruptcy Code.

16.      "*Closing Date*" means that date on which the Sale is closed.

17.      "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

18.     "*Creditor*" means the holder of a Claim against the Debtor as defined in section 101(10) of the Bankruptcy Code.

19.     "*Debtor*" means Horizon Ridge Medical & Corporate Center, LLC.

20.     "*Disputed*" means, with respect to any Claim or Membership Interest, any Claim or Membership Interest:  (a) listed on the Schedules as unliquidated, disputed or contingent, unless a proof of Claim has been timely filed or (b) as to which a party in interest, including without limitation the Plan Proponent or the Plan Administrator, has interposed an objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, and the Claim has not yet been Allowed.

21.     "*Distribution*" means a distribution of Cash to be made in accordance with the Plan.

22.     "*Effective Date*" means the day that the Confirmation Order becomes a Final Order.

23.     "*Entity*" means an "entity" as defined in section 101(15) of the Bankruptcy Code.

24.     "*Estate*" means the estate of the Debtor created on the Petition Date by section 541 of the Bankruptcy Code.

25.     "*Final Order*" and "*Final Determination*" both mean an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, as to which:  (a) the time for appeal has expired and no notice of appeal has been filed; (b) no stay as provided by Rule 8005 of the Federal Rules of Bankruptcy Procedure has been issued with respect to any timely filed appeal; or (c) any timely filed appeal in which a stay has issued has been finally determined or dismissed.

26.     "*General Unsecured Claim*" means any general unsecured Claim against the Debtor that is not entitled to priority under the Bankruptcy Code.

27.     "*Impaired*" means, with respect to a Claim, Membership Interest, or Class of Claims or Membership Interests, "impaired" within the meaning of section 1124 of the Bankruptcy Code.

28.     "*Insider*" means an "insider" as defined in section 101(31) of the Bankruptcy Code.

29.     "*Membership Interest*" means any ownership interest in the Debtor that existed immediately prior to the Petition Date, including, without limitation, any membership or equity

interest in the Debtor together with any option or legal contractual or equitable rights to purchase or acquire such interests that existed immediately prior to the Petition Date.

30.    "*Other Priority Claim*" means a Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code other than a Priority Tax Claim an Administrative Expense Claim.

31.    "*Petition Date*" means April 2, 2012, the date on which the Debtor filed the Chapter 11 Case.

32.    "*Plan*" means this First Amended Plan of Liquidation for Debtor Horizon Ridge Medical & Corporate Center, LLC by Creditor Bank of America, N.A. as Trustee, either in its present form or as it may be altered, amended, modified or supplemented from time to time.

33.    "*Plan Administrator*" means the Plan Proponent or its designee.

34.    "*Plan Proponent*" means Bank of America, N.A., Successor by Merger to LaSalle Bank National Association, as Trustee for the Registered Holders of GMAC Commercial Mortgage Securities, Inc., Commercial Mortgage Pass-through Certificates, Series 2003-C1, acting by and through CWCapital Asset Management LLC.

35.    "*Priority Tax Claims*" means Claims of governmental units of the kind specified in section 507(a)(8) of the Bankruptcy Code.

36.    "*Professional*" means any person or Entity employed pursuant to a Final Order in accordance with sections 327, 328 or 1103 of the Bankruptcy Code in the Chapter 11 Case.

37.    "*Representatives*" means, with regard to an Entity, its officers, directors, managers, shareholders, employees, advisors, attorneys, professionals, accountants, investment bankers, financial advisors, consultants, agents, servicers, and other representatives (including their respective officers, directors, employees, members and professionals).

38.    "*Rejection Claim*" means a Claim arising from the rejection of an executory contract or unexpired lease of the Debtor.

39.    "*Sale*" means the sale of the Debtor's Assets as provided for in this Plan.

40.    "*Sale Proceeds*" means the consideration received from the Sale.

41.     "*Schedules*" mean the schedules of assets and liabilities, schedules of executory contracts and statements of financial affairs filed by the Debtor pursuant to section 521 of the Bankruptcy Code.

42.     "*Trustee Claim*" means the Claim of the Plan Proponent as evidenced by Proof of Claim No. 2 filed in the Bankruptcy Case, which includes, among other things, interest and the fees, costs and expenses of the Plan Proponent to the extent allowable under section 506(b) of the Bankruptcy Code.  The Trustee Claim also includes, by right of subrogation, the amounts paid by the Plan Administrator on account of Class 2 Claims.  The Trustee Claim shall be an Allowed Claim.

43.     "*U.S. Trustee*" means the United States Trustee for the District of Nevada (Southern Division).

B.     *Rules of Interpretation*

1.     For purposes herein:  (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and each pronoun stated in the masculine, feminine or neutral gender shall include the masculine, feminine and the neutral gender; (b) any reference herein to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; and (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

2.     The provisions of Federal Rule of Bankruptcy Procedure 9006(a) shall apply in computing any period of time prescribed or allowed hereby.

3.     All references herein to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

## ARTICLE II.
## ADMINISTRATIVE AND PRIORITY CLAIMS
## (UNCLASSIFIED CLAIMS)

A. *Treatment of Administrative Claims*

    1. On or before the Administrative Bar Date, each holder of an Administrative Claim shall file with the Bankruptcy Court a request for payment of an Administrative Claim. Any Administrative Claim that is not filed on or before the Administrative Bar Date will be forever barred from assertion against the Debtor, the Estate, and the Assets. The Plan Administrator shall pay each holder of an Allowed Administrative Claim the full unpaid amount of such Claim in Cash on the Closing Date or as soon as practicable thereafter.

B. *Treatment of Priority Tax Claims and Other Priority Claims*

    The Plan Administrator shall pay each holder of an Allowed Priority Tax Claim and each holder of Allowed Other Priority Claim the full unpaid amount of such Allowed Priority Tax Claim or Allowed Other Priority Claim in Cash on the Closing Date or as soon as practicable thereafter.

C. *Treatment of Professional Claims*

    No payments may be made to Professionals without ~~the~~ prior ~~written consent~~order of the ~~Plan Proponent~~Bankruptcy Court. On or before the Administrative Bar Date, each Professional shall file an application for the final allowance of compensation and reimbursement of expenses that each such Professional has already received. Any fees or expenses that that have been paid to a Professional are subject to disgorgement to the Plan Administrator to the extent that (i) such fees and expenses are not approved in a ~~final order~~Final Order on a final application by a Professional or (ii) any Professional fails to file a final application for such fees and expenses on or before the Administrative Bar Date.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF ALLOWED CLAIMS
## AND ALLOWED MEMBERSHIP INTERESTS

A. *Summary*

    1. In accordance with section 1123(a)(1) of the Bankruptcy Code, the Plan Proponent has not classified Administrative Claims, Priority Tax Claims, and Other Priority Claims, as described in Article II.

2.      The following table classifies Claims and Membership Interests for all purposes under this Plan, including voting, confirmation and Distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Membership Interest is included within a particular Class only to the extent that the Claim or Membership Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Membership Interest qualifies within the description of such different Class.

3.      If this Plan is not confirmed, the proposed classifications, treatments, and priorities of claims, interests, and liens set forth in this Plan shall not be construed as an admission, waiver, or estoppel by or against the Plan Proponent as to the legally required or permissible classifications, treatments, or priorities under the Bankruptcy Code or other applicable law.

4.      Summary of Classification and Treatment of Classified Claims and Membership Interests:

| Class | Type | Status | Voting Rights |
|---|---|---|---|
| 1 | Trustee Claim | Impaired | Entitled to Vote |
| 2 | Allowed General Unsecured Claims | Unimpaired | Not Entitled to Vote |
| 3 | Allowed Membership Interests | Impaired | Not Entitled to Vote |

B.      *Classification and Treatment of Claims and Membership Interests*
1.      C. *Trustee Claim (Class 1)*

(a)      *Classification*:  Class 1 consists of the Trustee Claim.

(b)      *Distribution.*  On the Closing Date, the Plan Proponent shall receive the Sale Proceeds and any remaining Assets up to the full amount of the Allowed Class 1 Claim.

(c)      *Voting*:  Class 1 is impaired, and the Plan Proponent is entitled to vote to accept or reject the Plan on account of the Trustee Claim.

2.      *General Unsecured Claims (Class 2)*

(a)      *Classification:*  Class 2 consists of all Allowed General Unsecured Claims.

(b)    *Distribution.*    On the ~~Closing~~Effective Date or as soon as practicable thereafter, the Plan Administrator shall pay each holder of an Allowed General Unsecured Claim the full unpaid amount of such Allowed General Unsecured Claim in Cash.

(c)    *Voting*:  Class 2 is an unimpaired Class, and the holders of Allowed Class 2 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the holders of Allowed Class 2 Claims are not entitled to vote to accept or reject this Plan.

3.    *Membership Interest (Class 3)*

(a)    *Classification*:  Class 3 consists of holders of Allowed Membership Interests.

(b)    *Treatment*:  On the Closing Date or as soon as practicable thereafter, the holders of all Allowed Membership Interests shall receive any Sale Proceeds and any Assets remaining after payment in full of the Allowed Class 1 Claim.  On the Effective Date, all Allowed Membership Interests shall be canceled and extinguished.

(c)    *Voting*:  Holders of Allowed Membership Interests will not retain their Membership Interests and are not likely to receive any distributions on account of their Membership Interests.  Holders of Allowed Membership Interests are conclusively deemed to have rejected the Plan, and the Plan Proponent will not solicit their votes.

C. ~~D.~~ *Non-Consensual Confirmation*

To the extent that any Class votes, or is deemed, to reject the Plan, the Plan Proponent seeks confirmation of the Plan under section 1129(b) of the Bankruptcy Code.

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *The Sale*

On the first Business Day that is thirty (30) business days after the Effective Date, or as soon as practicable thereafter, the Plan Administrator shall implement the Sale as provided in this Plan. The Sale shall be a sale of the Assets free and clear of all Claims, Membership Interests, and other claims and interests pursuant to section 363 of the Bankruptcy Code.  The Sale shall be conducted in the manner directed by the Bankruptcy Court in the Confirmation Order and/or, in the absence of

direction from the Bankruptcy Court, determined by the Plan Administrator.  For the avoidance of doubt, the Plan Proponent may credit bid the amount, or any portion of the amount, of the Trustee Claim at the Sale; all other bidders must bid Cash.

The Closing Date shall occur on a date selected by the Plan Administrator not later than thirty (30) days after the conduct of the Sale.  On the Closing Date, the Debtor shall deliver good and marketable title to the Assets to the buyer thereof by way of special warranty deed, bill of sale, or such other instruments as may be necessary or customary.  In the event that the buyer of the Assets is not the Plan Proponent, the buyer shall deliver the full amount of the purchase price in Cash to the Plan Administrator on the Closing Date and the Plan Administrator shall make Distributions as provided in this Plan as soon as practicable thereafter.

B.    *Debtor in Possession*

The Debtor shall remain in possession of the Assets and continue to run its business in the ordinary course until the Closing Date.  After the Closing Date, the Debtor shall be further responsible for (a) dissolving the Debtor pursuant to applicable non-bankruptcy law; (b) making all reporting and other filings as required by the United States Trustee, and (c) closing the Chapter 11 Case.  In the event that the Debtor fails to take any of the actions listed in this section, the Plan Proponent and the Plan Administrator may choose to take any of these actions in its sole discretion. In no event shall the Plan Proponent or the Plan Administrator be required to take any of the actions listed in this section, nor shall the Plan Proponent or the Plan Administrator be liable for the failure to take any action listed in this section, nor shall recourse be had to the Assets for the failure to take any action listed in this section.

C.    *Debtor Cooperation with the Sale*

Upon and after the Effective Date, the Debtor and all of its Representatives shall provide full and complete cooperation to the Plan Administrator in conducting and closing the Sale, and effectuating an orderly transfer of the Assets to the purchaser thereof.  The Debtor shall immediately turn over to the Plan Administrator all documents as may be requested by the Plan Administrator, and grant the Plan Administrator, and any potential purchasers approved by the Plan Administrator, complete access to the Assets.  The Debtor may vacate the Property on fourteen days' written notice to the Lender's Las Vegas and Chicago counsel.

D.    *Third Parties in Possession of Assets*
All persons having possession of Assets including, without limitation, all banks and all of the Debtor's Representatives, shall immediately upon the Effective Date turn over all such Assets and other requested information to the Plan Administrator in usable form, with instructions or access codes, as may be necessary or helpful.

E.    *United States Trustee Fees*
Quarterly fees due to the United States Trustee pursuant to 11 U.S.C. 1930(a)(6) will be paid when due by the Plan Administrator.

F.    ***Limitation of Liability of the Plan Administrator and the Plan Proponent***
**No action or claim may be asserted against the Plan Administrator or the Plan Proponent for any matter relating to or arising out of this Chapter 11 Case, the confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be administered or distributed under the Plan, in any court without first obtaining approval of the Bankruptcy Court, and, in such event, any such action must be prosecuted before the Bankruptcy Court, which shall retain jurisdiction to adjudicate any such actions.  The Plan Administrator is acting solely as a fiduciary on behalf of the Estate in implementing this Plan. Neither the Plan Administrator, nor any of its employees, shall have any personal liability for serving in the fiduciary capacity of Plan Administrator, except for willful misconduct or gross negligence.**

G.    ***Term of Injunctions or Stays***
**Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and that are in existence on the Effective Date, shall remain in full force and effect until the Chapter 11 Case is closed.**

## PROVISIONS GOVERNING DISTRIBUTIONS

A.    *General Provisions; Undeliverable Distributions*
Distributions to the holders of Allowed Claims shall be made by the Plan Administrator at the address of each holder as set forth in the Schedules, unless superseded by the address set forth on proofs of Claim filed by such holder.  If any Distribution is returned as undeliverable, the Plan Administrator may, without requirement and in its sole discretion, make such efforts to determine

the current address of the holder of the Claim with respect to which the Distribution was made as the Plan Administrator deems appropriate, but no Distribution to any holder shall be made unless and until the Plan Administrator has determined the then-current address of the holder.

B.    *Unclaimed Property*

Distributions that are not claimed by the expiration of ninety (90) days from the Closing Date shall be deemed to be unclaimed property and shall vest in the Plan Administrator, and the Claims with respect to which those Distributions are made shall be automatically canceled.    After the expiration of that 90-day period, the Claim of any Entity to those Distributions shall be discharged and forever barred.  Nothing contained in the Plan shall require the Plan Administrator to attempt to locate any holder of an Allowed Claim.  All funds or other property that vests in in the Plan Administrator shall then be distributed to the Plan Proponent.

C.    *Manner of Cash Payments Under the Plan*

Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank selected by the Plan Administrator or by wire transfer from a domestic bank, at the option of the Plan Administrator.

D.    *Time Bar to Cash Payments by Check*

Checks issued by the Plan Administrator on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof, and shall be treated as unclaimed property under this Plan, and shall be discharged and forever barred and the proceeds of those checks shall become the property of the Plan Proponent.

E.    *Compliance with Tax Requirements*

In connection with making Distributions under this Plan, to the extent applicable, the Plan Administrator shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements.  The Plan Administrator may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit.  Any property so withheld will then be paid by the Plan Administrator to the appropriate authority.  If the holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within 90 days from the date of first notification

to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements unclaimed property under this Plan, and shall be discharged and forever barred.

F.    *No Payments of Fractional Dollars*
Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan.  Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.

**DISPUTED CLAIMS**

A.    *Resolution of Disputed Claims*
From and after the Effective Date, the Plan Proponent and Plan Administrator shall have all rights of the Debtor to file, prosecute, compromise, withdraw, or resolve objections to Claims; provided however that nothing in this Section shall prejudice the right of the Plan Proponent to object to Claims prior to the Effective Date.

B.    *Disallowance of Late Claims*
Any and all applications for Claims or proofs of Claim filed after the applicable Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice, action, order or approval of the Bankruptcy Court, and holders of such Claims may not receive any Distributions on account of such Claims, unless the Bankruptcy Court enters an order deeming any such Claim to be timely filed.

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

A.    *Plan Administrator and Existing Contracts and Unexpired Leases*
Following the Effective Date, the Plan Administrator may, in connection with the Sale or otherwise, assume, assume and assign, or reject the Debtor's existing executory contracts and unexpired leases, in the Plan Administrator's discretion.

DM3\2251374.3 2786503.1                    13

B.    *Rejection of Executory Contracts and Unexpired Leases*
All executory contracts and unexpired leases not expressly assumed or assumed and assigned by and through the Closing Date will be deemed automatically rejected as of the Closing Date.

C.    *Rejection Claims*
All Rejection Claims must be filed with the Bankruptcy Court and served on the Plan Proponent and other parties in interest no later than thirty (30) days after the rejection of any executory contract or unexpired lease.  Any Rejection Claim for which a proof of Claim is not timely filed within thirty (30) days of the rejection of an executory contract or unexpired lease will be forever barred from assertion against the Debtor, the Estate, and the Assets, and shall be subject to the discharge and permanent injunction set forth below.  Unless otherwise ordered by the Bankruptcy Court, all Rejection Claims that are timely filed as provided herein shall be subject to review by the Plan Administrator and the Plan Proponent, who shall each have 60 days from the Closing Date to review and object to any such Rejection Claim.  To the extent (a) there is no objection following such 60-day period to any timely filed Rejection Claim or (b) there is a Final Order allowing such timely filed Rejection Claim, such Rejection Claim (or portion thereof allowed by Final Order) shall be an Allowed Rejection Claim and paid by the Plan Administrator.

**ARTICLE VIII.**
**~~EXCULPATION,~~ PRESERVATION OF CAUSES OF ACTION, INJUNCTION, RELEASE, AND RELATED PROVISIONS**

A.    *~~Exculpation~~*
~~The Plan Proponent, the Plan Administrator, and each of their respective Representatives, shall not have or incur, and are hereby released from, any claim or other liability to any holder of a Claim or Membership Interest, the Debtor, any other party in interest, any of their Representatives, anyone claiming by or through them, or any other Entity for any act or omission in connection with, relating to, or arising out of the Trustee Claim, the Plan Proponent's relationship with the Debtor both before and after the Petition Date, any action taken by the Plan Proponent with respect to the Debtor both before and after the Petition Date, this Chapter 11 Case, this Plan, the confirmation of the Plan, or the administration of the Plan or the property to be administered or distributed under the Plan.~~

A.    B. *Preservation of Rights of Action*
    1.    *Vesting and Transfers of Causes of Action*

(a)    Except as otherwise provided in the Plan or Confirmation Order, in accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtor or the Estate may hold against any Entity shall vest upon the Effective Date in the Plan Proponent. Upon the Effective Date, the Plan Proponent shall have the exclusive right to institute, prosecute, abandon, settle or compromise any Cause of Action.  Causes of Action, and any recoveries therefrom, shall remain the sole property of the Plan Proponent.  Each Cause of Action is expressly reserved for later adjudication by the Plan Proponent (including, without limitation, Causes of Action not specifically identified or described) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order.  In addition, the right to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits, is expressly reserved.

(b)    Any Entity to whom the Debtor has incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from the Debtor or a transfer of money or property of the Debtor, or who has transacted business with the Debtor, should assume that any such obligation, transfer, or transaction may be reviewed by the Plan Proponent subsequent to the Effective Date and may be the subject of a Cause of Action after the Effective Date, regardless of whether:  (i) such Entity has filed a proof of Claim against the Debtor in the Chapter 11 Case; (ii) an objection to any such Entity's proof of Claim has been filed; (iii) any such Entity's Claim was included in the Schedules; (iv) an objection to any such Entity's scheduled Claim has been filed; or (v) any such Entity's scheduled Claim has been identified as disputed, contingent or unliquidated.

B.    C. **_Release and Injunction_**
    1.    **From and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner against the Debtor, the Estate, or the Assets, as the**

case may be, any suit, action or other proceeding, on account of or respecting any Claim, demand, liability, obligation, debt, right, Cause of Action, interest or remedy that arose before the Effective Date.

2.     **From and after the Effective Date, all Entities shall be precluded from asserting against the Debtor, the Estate, or the Assets, any other Claims or Membership Interests based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.**

3.     **The rights afforded in the Plan and the treatment of all Claims and Membership Interests in the Plan shall be in exchange for and in complete satisfaction of Claims and Membership Interests of any nature whatsoever against the Debtor, the Estate, and the Assets. On the Effective Date, all such Claims against, and Membership Interests in, the Debtor shall be satisfied and released in full.**

4.     **On and after the Effective Date, all Entities are permanently enjoined, on account of any Claim or Membership Interest, from:**

    (a)     **commencing or continuing in any manner any action or other proceeding of any kind against the Debtor, the Estate, or the Assets;**

    (b)     **enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the Debtor, the Estate, or the Assets;**

    (c)     **creating, perfecting or enforcing any encumbrance of any kind against the Debtor, the Estate, or the Assets;**

    (d)     **commencing or continuing in any manner any action or other proceeding of any kind against the Debtor in respect of any Claim, Membership Interest, or Cause of Action.**

5.     **Nothing in this Article or this Plan shall be constructed as granting a release or issuing an injunction with respect to any claims against, or other liability of, the Debtor's Representatives. Further, nothing in this Plain, including the release and injunction granted with respect to the Debtor in this Article, shall have any effect on any claims against, or any other liability of, the Debtor's Representatives to any Entity at any point in time.**

**ARTICLE IX**
**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, the Debtor, the Plan, and the Plan Administrator as is legally permissible, including, without limitation, jurisdiction to:

1.    allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Membership Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Membership Interests;

2.    grant or deny any applications for allowance of compensation or reimbursement of expenses;

3.    resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired lease to which the Debtor is party or with respect to which the Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including those matters related to any amendment to the Plan after the Effective Date;

4.    ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.    decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date or instituted by the Plan Administrator or Plan Proponent after the Effective Date, provided, however, that the Plan Administrator and Plan Proponent shall reserve the right to commence actions in all appropriate jurisdictions;

6.    enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan;

7.      resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, Sale, Closing Date, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

8.      issue injunctions, enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the Plan;

9.      enforce Article VIII.A and Article VIII.B;

10.      enforce the Injunction set forth in Article VIII.CB;

11.      resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained in Article VIII, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

12.      enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

13.      resolve any other matters that may arise in connection with or relate to the Plan,  the Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan; and

14.      enter an order and/or the decree contemplated in Federal Rule of Bankruptcy Procedure 3022 concluding the Chapter 11 Case.

**MISCELLANEOUS PROVISIONS**

A.      *Payment of Statutory Fees*

All fees payable to the United States Trustee or under section 1930 of title 28 of the United States Code shall be paid by the Plan Proponent as and when due.

B.      *Modification of Plan*

Subject to the limitations contained in the Plan:  (1) the Plan Proponent reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Plan

Proponent or the Plan Administrator may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

C.      *Revocation of Plan*

The Plan Proponent reserves the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order, and to file subsequent chapter 11 plans.  If the Plan Proponent revokes or withdraws the Plan or if entry of the Confirmation Order or the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any claims by the Plan Administrator or Plan Proponent; (b) prejudice in any manner the rights of the Plan Administrator or Plan Proponent; or (c) constitute an admission of any sort by the Plan Administrator or Plan Proponent.

D.      *Successors and Assigns*

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

E.      *Governing Law*

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Nevada, without giving effect to the principles of conflict of laws thereof.

F.      *Severability*

If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter or interpret such term or provision to make it valid and enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.

Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

G.    *Reservation of Rights*
Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by the Plan Proponent or any Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Plan Proponent with respect to the Debtor or the holders of Claims or Membership Interests or other parties-in-interest; (2) the Debtor with respect to the holders of Claims or Membership Interests or other parties-in-interest; or (3) any holder of a Claim or other party-in-interest prior to the Effective Date.

H.    *Section 1146 Exemption*
Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto (including, without limitation, the Sale) shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

I.    *Section 1125(e) Good Faith Compliance*
Upon Confirmation of this Plan, the Plan Proponent and its Representatives shall be deemed to have acted in "good faith" under section 1125(e) of the Bankruptcy Code.

J.    *Further Assurances*
The Debtor, all holders of Claims receiving Distributions hereunder, and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

1
2
3
K.      *Filing of Additional Documents*

On or before the Effective Date, the Plan Proponent may file with the Bankruptcy Court all

agreements and other documents that may be necessary or appropriate to effectuate and further

evidence the terms and conditions hereof.

L.    *No Stay of Confirmation Order*

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Federal Rules of Bankruptcy Procedure 3020(e) and 7062.

Respectfully submitted this ~~20~~6th day of ~~August, 2012~~January, 2014.

**BANK OF AMERICA, N.A., Successor by Merger to LaSalle Bank National Association, as Trustee for the Registered Holders of GMAC Commercial Mortgage Securities, Inc., Commercial Mortgage Pass-through Certificates, Series 2003-C1**
By:  CWCapital Asset Management LLC, its
       Special Servicer
       By:  /s/ Benjamin C. Miller
       Its:  Vice President

and

**DUANE MORRIS LLP**

By:    /s/ John Robert Weiss
       John R. Robert Weiss
       Brian A. Neighbarger

**Attorneys for Bank of America, N.A., successor by merger to LaSalle Bank National Association, as trustee for the registered holders of GMAC Commercial Mortgage Securities, Inc., Commercial Mortgage Pass-Through Certificates, Series 2003-C1, acting by and through CWCapital Asset Management LLC, Special Servicer**

Document comparison by Workshare Professional on Tuesday, January 07, 2014 7:45:40 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://DM/DM3/2251374/3 |
| Description | #2251374v3<DM3> - Horizon Plan of Liquidation |
| Document 2 ID | interwovenSite://DM/DM3/2786503/1 |
| Description | #2786503v1<DM3> - Lender's First Amended Plan of Liquidation |
| Rendering set | DM - Double Underline Strikethrough |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 28 |
| Deletions | 43 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 71 |