# EXHIBIT 2

# EXHIBIT 2





Honorable Lloyd King
United States Bankruptcy Judge

**Entered on Docket**
**January 03, 2014**

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

* * * * * *

In re:                                    )    Case No.: BK-S-12-13906 btb
                                          )
HORIZON RIDGE MEDICAL &                   )    Chapter 11
CORPORATE CENTER, L.L.C.,                 )
                                          )    Date:  September 16 & 17, 2013
                    Debtor.               )
_____        )

**MEMORANDUM DECISION CONDITIONALLY
GRANTING CONFIRMATION OF THE PLAN OF
LIQUIDATION FOR DEBTOR HORIZON RIDGE MEDICAL &
CORPORATE CENTER, LLC BY CREDITOR BANK OF
AMERICA, N.A. AS TRUSTEE[1]**

## INTRODUCTION

A plan confirmation hearing ("Confirmation Hearing") concerning two

competing reorganization plans in the above-referenced case was conducted on

September 16 and 17, 2013.[2] Talitha Gray Kozlowski, Esq., and Teresa M.

---

[1] In this Order, all references to "Section" shall be to provisions of the Bankruptcy Code,
11 U.S.C. section 101 et seq., unless otherwise indicated.  All references to "Code" shall be to
the United States Bankruptcy Code, 11 U.S.C. § 101, et. seq.  All references to "FRCP" shall be
to the Federal Rules of Civil Procedure.  All references to "FRBP" or "Rule" shall be to the
Federal Rules of Bankruptcy Procedure.

[2] Three disputed matters were considered at the Confirmation Hearing:
 (i) Final approval of the Debtor's Disclosure Statement (Dkt. #116) that was conditionally
    approved on November 14, 2012 (Dkt. #159);
 (ii) Confirmation of Debtor's Second Amended Plan (Dkt. #284) (Ex. 2); and

Pilatowicz, Esq., of Gordon Silver, appeared for Horizon Ridge Medical & Corporate Center, LLC ("Debtor"). John Robert Weiss, Esq., and Dominica C. Anderson, Esq., of Duane Morris, appeared for Bank of America, N.A.[3] ("BofA" or "Lender").

After the filing of post-hearing memoranda,[4] final arguments were heard on October 22, 2013. On that date, the Court advised counsel that confirmation of Debtor's Second Amended Plan of Reorganization ("Second Amended Plan") would be denied, and that Lender's Plan of Liquidation for Debtor Horizon Ridge Medical & Corporate Center, LLC by Creditor Bank of America, N.A. as Trustee ("Plan") would be confirmed. Counsel for Lender was told to file proposed findings of fact and conclusions of law.

This opinion concerns only the confirmation of Lender's Plan. A separate opinion and order denying confirmation of Debtor's Second Amended Plan and denying approval of Debtor's Disclosure Statement were released December 20, 2013 (Dkt. ##351, 352, and 353, respectively).

## FACTS

Debtor owns and operates the Horizon Ridge Medical & Corporate Center, an office building located at 2610 W. Horizon Ridge Parkway, Henderson, Nevada

---

(iii) Confirmation of Lender's Plan. (Dkt. #126) (Ex. 7).

[3] Bank of America, N.A. is the successor by merger to LaSalle Bank National Association, as trustee for the registered holders of GMAC Commercial Mortgage Securities, Inc., Commercial Mortgage Pass-Through Certificates, Series 2003-C1.

[4] Post Confirmation Hearing memoranda included BofA's Post-Trial Memorandum ("Post-Trial Memorandum," Dkt. #306), Debtor's Post-Confirmation Brief ("Post-confirmation Brief," Dkt. #308), and BofA's Response to Post-Trial Confirmation Brief of the Debtor ("Response," Dkt. #312).

1    (the "Property").[5]

2    Debtor filed a voluntary Chapter 11 petition on April 2, 2012.  (Dkt. #1).

3    On November 7, 2012, the court, after notice and hearing, entered an order

4    confirming that since BofA represented the only impaired class in the Plan, BofA

5    need not prepare a Disclosure Statement or solicit votes on the Plan.  (Lender's

6    Disclosure Statement Order, Dkt. #152).

7    **Valuation of the Property.**

8    On February 22, 2013, the court valued the Property, for purposes of

9    confirmation, at $3,975,000.  (Property Valuation Order, Dkt. #223, at p. 2).

10   On October 22, 2013, the court, after notice and hearing, set the total value

11   of BofA's claim at $4,344,314.52 (including interest, fees and costs).  (Objection to

12   Proof of Claim Order, Dkt. #313, at p. 4).[6]  The Court valued Lender's secured

13   claim at $3,975,000.00 and its unsecured claim at $369,314.52[7] as of July 31,

14   2013, subject to the allocation or application, if any, of the adequate protection

15   payments tendered by Debtor to Lender.  (Id.).

16   On October 7, 2012, the court entered an order holding that "[b]ecause only

17

18   _____

     [5] Debtor is a single-asset real estate entity: its sole asset is the Property and improvements
19   comprising the Medical Center building.  The Property is managed by Dr. Rick Abelson.
     (Second Amended Plan, ¶ 5.7, Dkt. #284, at p. 22).

20   The "Property is approximately 2.2 acres of land, and the Center consists of a two-story
     office building situated on the Real Property with approximately 29,142 sq. ft., containing six
21   first-floor suites, and seven second-floor suits, one of which has been subdivided into nine suites,
     for a total of twenty-one suites. Debtor maintains its management office in one of the eight
22   subdivided suites, as well as a community conference room, thereby leaving nineteen leasable
     suites." (Debtor's Disclosure Statement, Dkt. #116, at p. 15).

23

24   [6] Debtor appealed the court's October 22, 2013 Objection to Proof of Claim Order.  The
     appeal is pending before the Ninth Circuit Bankruptcy Appellate Panel.  (Dkt. #317).

25

26   [7] The unsecured portion of BofA's claim comprises post-petition professional costs,
     attorneys fees and costs.  (Objection to Proof of Claim Order, Dkt. #313, at p. 4).

the Plan Proponent is entitled to vote on the Plan, no acceptances or rejections of the Plan need be solicited. Therefore no disclosure statement with respect to the Plan is necessary."[8]  (Disclosure Statement Order, Dkt. #152).

**The Lender's Liquidation Plan.**

On October 17, 2012, BofA docketed its Plan of Liquidation for Debtor Horizon Ridge Medical and Corporate Center, LLC by Creditor Bank of America, NA as Trustee ("Plan").[9]  (Dkt. #126).  The Plan sets forth three separate classes of creditors.  Class 1, BofA's claim; Class 2, Allowed General Unsecured Claims; and Class 3, Allowed Member Interests.  (Id. at p. 8).

The Plan proposes a sale of all of the Debtor's assets free and clear of all claims and interests pursuant to section 363(f) of the Bankruptcy Code, paying all Class 2, Allowed General Unsecured Claims, in full and in cash on the effective

---

[8] As noted in fn.4, infra, Class 2, General Unsecured Claims, is unimpaired. (Plan, Section III (C)(2), at pp.8-9, Dkt. #126).  Pursuant to Section 1126(f), the members of Classes 2 are conclusively presumed to have accepted the Plan.  11 U.S.C. § 1126(f).  Class 3, Membership Interests, is impaired; the Member Interests are cancelled and extinguished and will likely receive nothing from the sale of the Debtor's assets.  (Plan, Section III (C)(3), at p. 9, Dkt. #126).  Pursuant to Section 1126(g), the members of Class 3 are deemed to have rejected the Plan.  11 U.S.C. § 1126(g).

Class 1, BofA's Claim, is impaired, receives distributions under the plan, and would have been the only creditor class eligible to vote on the Plan.  (Plan, Section III (C)(1), at p. 8, Dkt. #126).  As the Plan proponent, BofA would have voted to accept the Plan.

[9] On August 20, 2012, after expiration of Debtor's exclusivity period, BofA filed its original liquidation plan.  (Original Plan, Dkt. #68).  The new Plan differs from the original only in that some portions of the Plan have been put into a bold typeface or underlined.  (Plan, Dkt. #126, at p. 1 n.1)

4

date.[10] (Plan, at pp. 8-9). Class 3, Allowed Member Interests,[11] will not retain its member interests and likely will receive no distribution from the sale of the Property. (Id.)

Debtor argues[12] that Lender's Plan fails to meet the requirements of Sections 1129(a)(1), (a)(2), (a)(3), (a)(5), (a)(8), and (a)(9). (Objection to Confirmation, Dkt. #281, at p. 3). Debtor argues, inter alia, that the Plan fails to provide specifics of the proposed sale, name the Plan Administrator, and propose proper treatment of executory contracts.[13] (Id. at pp. 3-8). Debtor also argues that the plan fails to adequately describe Debtor's assets to be sold at the sale. (Id. at p. 9).

## DISCUSSION

Confirmation of a plan of reorganization is governed by Section 1129 of the

---

[10] Lender, at the Confirmation Hearing, agreed to modify the Plan and make the payments to Class 2 on the Effective Date, rather than the Closing Date. Doing so renders Debtor's argument that the Plan violates Section 1123(a)(2) moot. (Dkt. #281, at p. 7).

[11] Chandrakant Patel ("Patel") and Dr. Rick Abelson ("Abelson") own the equity interests in Debtor.

[12] These arguments are raised in both Debtor's Objection to Confirmation of the Plan of Liquidation Proposed by Bank of America, NA as Trustee ("Objection to Confirmation", Dkt. # 281), Debtor's brief in support of confirmation of Debtor's Plan, against Lender's and Debtor's Post Confirmation Brief. (Post-Confirmation Brief, Dkt. #308).

[13] Debtor notes that the Plan fails to properly account for Debtor's executory tenant leases. (Objection to Confirmation, Dkt. #281, at p. 8). Lender's Plan provides that the Plan Administrator will decide sometime after the Effective Date whether it would assume or reject the tenant leases. (Plan, Dkt. #126, at pp. 13-14). Delayed assumption or rejection is not fatal to a reorganization plan. See In re UAL Corp., 635 F.3d 312, 321 (7th Cir. 2011), DJS Prop., L.P. v. Simplot, 397 B.R. 493, 498-501 (D. Idaho 2008) (bankruptcy court did not abuse its discretion by approving a plan calling for post-confirmation assumption or rejection of executory contracts; noting that this interpretation is supported by sound policy reasons and lives up to congressional intent). The Ninth Circuit Bankruptcy Appellate Panel has agreed that executory contracts ride-through the bankruptcy confirmation process if the plan proponent does not assume or reject the contracts in the plan. See In re ZZ L.L.C., 371 B.R. 412, 424-25 (B.A.P. 9th Cir. 2007).

Bankruptcy Code.  11 U.S.C. § 1129.  Under section 1129, the court has an affirmative duty to ensure that the plan satisfies all of the requirements for confirmation.  <u>Liberty Nat'l Enters. v. Ambanc La Mesa Limited Partnership (In re Ambanc La Mesa)</u>, 115 F.3d 650, 653 (9th Cir. 1997), <u>cert</u> <u>denied</u>, 522 U.S. 1110 (1998).

In determining whether the standard has been met, the court may take into account all previous proceedings and matters on record in the case.  <u>See</u> <u>In re Acequia, Inc.</u>, 787 F.2d 1352, 1358 (9th Cir. 1986).

Generally, a plan of reorganization can be confirmed in one of two ways. Initially, if all sixteen subsections of Section 1129(a) are satisfied by the plan proponent, a plan can be confirmed consensually under Section 1129(a).  <u>RadLAX Gateway Hotel, LLC v. Amalgamated Bank ("RadLAX")</u>, 132 S. Ct. 2065, 2069, 182 L. Ed. 2d 967 (2012).  <u>See also</u> <u>United States ex rel. Farmers Home Admin. v. Arnold & Baker Farms (In re Arnold & Baker Farms)</u>, 177 B.R. 648, 654 (B.A.P. 9th Cir. 1994).

In the instant case, Class 3, Member Interests, was deemed by statute to reject confirmation of the Plan.  11 U.S.C. § 1126(g).  Accordingly, Lender's Plan cannot be confirmed consensually under Section 1129(a).

If a plan proponent satisfies all paragraphs of Section 1129(a) except the unanimous voting requirement of Section 1129(a)(8), then the court may still confirm the plan as long as the plan "does not discriminate unfairly" against and "is fair and equitable" towards each impaired class that has not accepted the plan. 11 U.S.C. § 1129(b)(1).  <u>RadLAX</u>, <u>supra</u>, 132 S. Ct. at 2069; <u>Bank of America Nat'l Trust Ass'n v. 203 North LaSalle St. P'ship ("203 North LaSalle")</u>, 526 U.S. 434, 441 (1999); <u>In re Ambanc La Mesa</u>, <u>supra</u>, 115 F.3d at 653.  This second,

nonconsensual method of confirmation is commonly referred to as "cramdown."[14]
RadLAX, supra, 132 S.Ct. at 2069; 203 North LaSalle, 526 U.S. at 441.

Given that Class 3, Member Interests, is deemed to have rejected the
Lender's Plan, the only method of confirmation available to BofA is
nonconsensual cramdown under Section 1129(b).  11 U.S.C. § 1129(b).

Even though Debtor does not attack the BofA's Plan regarding each element
of Section 1129(a), the court has a duty to consider each element of Section 1129
when considering a plan for confirmation.  In re Ambanc La Mesa, supra, 115 F.3d
at 653.  Although:

> the primary purpose of Chapter 11 is reorganization, liquidation is
> not prohibited.  Reorganization encompasses rehabilitation and
> may include liquidation."  In re Copy Crafters, 92 B.R. at 985–86
> (internal quotations and citations omitted); see also In re
> Ionosphere Clubs, Inc., 184 B.R. 648, 654 (S.D.N.Y. 1995) (citing
> cases recognizing that Chapter 11 permits liquidation in
> appropriate cases); In re Deer Park, Inc., 136 B.R. 815, 818 (9th
> Cir. BAP 1992), aff'd, 10 F.3d 1478 (9th Cir. 1993) (holding that
> Section 1129(a)(11) of the Bankruptcy Code provides that
> liquidation may be contemplated in a valid Chapter 11 plan of
> reorganization).

Cadle Co. II, Inc. v. PC Liquidation Corp. (In re PC Liquidation Corp.), 383 B.R.
856, 866-67 (Bankr. E.D.N.Y. 2008).

---

[14] "Courts use "cramdown" and "cram down" and "cram-down" interchangeably to refer
to nonconsensual confirmation.  Indeed, Justice Douglas once combined different forms in the
same paragraph.  Blanchette v. Connecticut Gen. Ins. Corps., 419 U.S. 102, 167 (1974)
(Douglas, J., dissenting).  The hyphenated version appears to have been the first locution used by
a court. New England Coal & Coke Co. v. Rutland R.R. Co., 143 F.2d 179, 189 n.36 (2d Cir.
1944).  The earliest print references to the term use either the two-word or the hyphenated form.
Compare Robert T. Swaine, Present Status of Railroad Reorganizations And Legislation
Affecting Them, AM. BAR ASS'N, PROCEEDINGS OF THE SECTION ON COMM. LAW 15, 15 (1940)
(two-word form) and Warner Fuller, The Background and Techniques of Equity and Bankruptcy
Railroad Reorganizations-A Survey, 7 Law & Contemp. Probs. 377, 389, 390 (1940)
(hyphenated form)."  In re Shat, 424 B.R. 854, 855 fn.7 (Bankr. D. Nev. 2012).

Sections 1129(a)(1) and (a)(2) require the court to consider whether Lender's Plan and the Lender have complied with the Code. 11 U.S.C. §§ 1129(a)(1) & (2).

### Section 1129(a)(1) - Plan compliance with applicable provisions of the Bankruptcy Code.

Pursuant to Section 1129(a)(1) the court may not confirm a plan unless "[t]he plan complies with the applicable provisions of this title." 11 U.S.C. § 1129(a)(1). Stated differently, if the court finds any of the Debtor's Plan objections meritorious, the Plan would also have violated Section 1129(a)(1).[15]

Debtor argues that:

> Lender's Plan provides for exculpation and release of Secured Lender and the Plan Administrator from any liability to Debtor or the estate. See Lender's Plan, Art. VIII(A). There is no basis in law for allowing a secured lender, who is not an estate fiduciary, exculpation and release under its own liquidating plan, and there is no disclosure or evidence submitted to support a release of any claims against such parties even if such provisions were otherwise proper in any event.

(Objection to Plan, Dkt. #281, at p. 8; Post-Confirmation Brief, Dkt. #308, at pp. 32-33). Although there exists a split of authority concerning exculpation clauses for third parties,[16] the Ninth Circuit has repeatedly found that such provisions are

---

[15] Section 1129(a)(1) has been interpreted to be applicable to provisions of the Bankruptcy Code pertaining to the form and content of reorganization plans. See Kane v. Johns–Manville Corp., 843 F.2d 636, 648-49 (2d Cir. 1988) (stating that the legislative history of Section 1129(a)(1) suggests that Congress intended the phrase "applicable provisions" to mean provisions of Chapter 11 that concern the form and content of reorganization plans and that it is doubtful that violations of Code provisions unrelated to the form and content of a plan implicate subsection 1129(a)(1) at all). In re PC Liquidation Corp., supra, 383 B.R. at 866-67.

[16] The Second Circuit recently stated:
"We have previously held that "[i]n bankruptcy cases, a court may enjoin a creditor from suing a third party, provided the injunction plays an important part

8

impermissible.  <u>Resorts Int'l, Inc. v. Lowenschuss (In re Lowenschuss)</u>, 67 F.3d

1394, 1401-02 (9th Cir. 1995) (based upon the clear language of Section 524(e)).

<u>Accord</u>, <u>In re Linda Vista Cinemas, L.L.C.</u>, 442 B.R. 724, 743 (Bankr. D. Ariz.

2010).[17]

Debtor is correct, and <u>In re Lowenschuss</u>, et al., hold that Section 524(e)'s

reach is limited to debtors and does not affect liability of 3rd parties.  In this case,

Lender's Plan provides that:

A. Exculpation

---

in the debtor's reorganization plan." <u>SEC v. Drexel Burnham Lambert Group, Inc.</u>
<u>(In re Drexel Burnham Lambert Group, Inc.)</u>, 960 F.2d 285, 293 (2d Cir. 1992).
While none of our cases explains when a nondebtor release is "important" to a
debtor's plan, it is clear that such a release is proper only in rare cases.  <u>See</u>, <u>e.g.</u>,
<u>Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)</u>, 280
F.3d 648, 657–58 (6th Cir.2002) ( "[S]uch an injunction is a dramatic measure to
be used cautiously ....");  <u>Gillman v. Continental Airlines (In re Continental</u>
<u>Airlines)</u>, 203 F.3d 203, 212–13 (3d Cir.2000) (recognizing that nondebtor
releases have been approved only in "extraordinary cases").  The Ninth and Tenth
Circuits have held that nondebtor releases are prohibited by the Code, except in
the asbestos context. <u>See</u> <u>Resorts Int'l, Inc. v. Lowenschuss (In re Lowenschuss)</u>,
67 F.3d 1394, 1401–02, 1402 n. 6 (9th Cir.1995); <u>Landsing Diversified Props.-II</u>
<u>v. First Nat'l Bank and Trust Co. of Tulsa (In re W. Real Estate Fund, Inc.)</u>, 922
F.2d 592, 600–02 (10th Cir. 1990) ( <u>per curiam</u>)."  <u>In re Metromedia Fiber</u>
<u>Network, Inc.</u>, 416 B.R. 136, 142 (2nd Cir. 2005).

[17] <u>American Hardwoods, Inc. v. Deutsche Credit Corp. (In re American Hardwoods,
Inc.)</u>, 885 F.2d 621, 626 (9th Cir. 1989); <u>Underhill v. Royal</u>, 769 F.2d 1426, 1432 (9th Cir.1985);
<u>1402 Commercial Wholesalers, Inc. v. Investors Commercial Corp.</u>, 172 F.2d 800, 801 (9th
Cir.1949); <u>see also Sun Valley Newspapers, Inc. v. Sun World Corp. (In re Sun Valley</u>
<u>Newspapers, Inc.)</u>, 171 B.R. 71, 77 (B.A.P. 9th Cir. 1994) (holding reorganization plans which
proposed to release non-debtor guarantors violated § 524(e) and were therefore unconfirmable);
<u>Seaport Automotive Warehouse, Inc. v. Rohnert Park Auto Parts, Inc. (In re Rohnert Park Auto
Parts, Inc.)</u>, 113 B.R. 610, 614-17 (B.A.P. 9th Cir. 1990) (finding that a reorganization plan
provision which enjoined creditors from proceeding against co-debtors violated § 524(e)); <u>In re
Keller</u>, 157 B.R. 680, 686-87 (Bankr. E.D. Wash. 1993) (refusing to confirm a reorganization
plan that compelled a creditor to release liens against a non-debtor's property).

9

> The Plan Proponent, the Plan Administrator, and each of their respective Representatives, shall not have or incur, and are hereby released from, any claim or other liability to any holder of a Claim or Membership Interest, the Debtor, any other party in interest, any of their Representatives, anyone claiming by or through them, or any other Entity for any act or omission in connection with, relating to, or arising out of the Trustee Claim, the Plan Proponent's relationship with the Debtor both before and after the Petition Date, any action taken by the Plan Proponent with respect to the Debtor both before and after the Petition Date, this Chapter 11 Case, this Plan, the confirmation of the Plan, or the administration of the Plan or the property to be administered or distributed under the Plan.

Plan, Dkt. #126, at p. 14) (bold and underline omitted).  This provision is precisely the kind of provision prohibited by In re Lowenschuss, and cannot be permitted to stand.  The court is hesitant to allow this provision to block confirmation, and provides the Lender with an opportunity to docket a modified plan excluding this provision.  Provided the Lender submits a modified plan omitting the exculpation provision the Plan may be confirmed under this Section.

### Section 1129(a)(2) - Plan proponent's (Debtor's) compliance with applicable provisions of the Bankruptcy Code.

Pursuant to Section 1129(a)(2) the court may not confirm a plan unless "[t]he proponent of the plan complies with the applicable provisions of this title." 11 U.S.C. § 1129(a)(2).  "The legislative history of the Section indicates that Congress was concerned "that the proponent of the plan must comply with the applicable provisions of title 11, such as ... disclosure and solicitation requirements of sections 1125 and 1126." 7 COLLIER ON BANKRUPTCY ¶ 1129.02[2], at p. 1129-19 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2009); see also In re Idearc, Inc., 423 B.R. 138, 163 (Bankr. N.D. Tex. 2009).

Given that all votes on BofA's Plan were compelled by statute except for the vote of BofA, the plan proponent, the court previously determined that no

10

disclosure statement or vote solicitation was required.  (Disclosure Statement Order, Dkt. # 152).

Debtor argues that the Plan contains inadequate information in several respects and cannot be confirmed as a result:

> Given all of the disclosure shortcomings as previously described herein, including with respect to the timing, conduct, and procedures with respect to the proposed Sale in particular, the Lender's Plan fails to provide adequate information of a kind and in sufficient detail such that the holders of claims or interests in the case can make an informed judgment about the Lender's Plan pursuant to Section 1125.

(Objection to Confirmation, Dkt. #281, at p. 9; Post-Confirmation Brief, Dkt. #308, at p. 33).  Debtor is incorrect.[18]

Even if the court agreed that BofA's Plan failed to provide the detail sought by Debtor, the court finds such failure was, at most, harmless error.  See, e.g., Hobson v. Travelstead (In re Travelstead), 227 B.R. 638, 650 (D. Md. 1998) (court found that failure to schedule creditor as a creditor deprived her of her right to vote on the plan, but that such error was harmless, because creditor's vote could not have impeded confirmation of the reorganization plan); A.H. Robins Co., Inc. v. Official Comm. of Equity Security Holders (In re A.H. Robins Co., Inc.), 880 F.2d 694, 698 (4th Cir. 1989), cert. denied, 493 U.S. 959 (1989) (court did not decide whether voting procedure was improper because the outcome of the vote meant the questioned procedure was, at most, harmless error).

---

[18]This is not a case where creditors needed to be informed in order to cast a ballot on the Lender's Plan.  However, in a situation where there will be ballots cast, Debtor is correct, and there is little, if any, room for harmless error.  A materiality standard, focusing on the information needed by a "hypothetical reasonable investor typical of holders of claims or interests of the relevant class", 11 U.S.C. § 1125(a)(1), itself distinguishes the inconsequential from the significant.  In re Crowthers McCall Pattern, Inc., 120 B.R. 279, 300-01 (Bankr. S.D.N.Y. 1990).

Rule 9005 adopts Fed. R. Civ. P. 61 for the purposes of bankruptcy proceedings and provides that "no error or defect in any ruling or order or in anything done or omitted by the court" is grounds for disturbing an order "unless refusal to take such action appears to the court inconsistent with substantial justice" and the court "must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." <u>See</u> <u>River Hills Assoc., Ltd. v. River Hills Apartments Fund (In re River Hills Apartments Fund)</u>, 813 F.2d 702, 706–07 (5th Cir. 1987).

> The harmless error rule has been invoked in the bankruptcy context where procedural irregularities, including alleged errors in voting procedures, would not have had an effect on the outcome of the case. <u>See</u> <u>Gilman v. Davis (In re State Thread Co.)</u>, 126 F.2d 296, 301 (6th Cir. 1942) (voting); <u>In re Flexible Conveyor Co.</u>, 156 F. Supp. 164, 174 (N.D. Ohio 1957) (voting); <u>Ferguson v. Central National Bank (In re Ferguson)</u>, 67 B.R. 246, 250 (D. Kan. 1986) (discovery); <u>In re Mandalay Shores Cooperative Housing Ass'n, Inc.</u>, 63 B.R. 842, 852 (N.D. Ill. 1986) (notice); <u>cf.</u> <u>IIT v. Lam (In re Colorado Corp.)</u>, 531 F.2d 463, 470 (10th Cir. 1976) (denial of creditors' right to vote for trustee was not harmless error where "their votes could have affected and probably would have altered, the outcome").

<u>Kane v. Johns-Mansville Corp.</u>, 843 F.2d 636, 647 (2d Cir.1988)

Debtor's alleged errors are harmless because no vote was ever going to be cast in this case regarding the Lender's Plan. If no vote was going to be solicited or cast, the specific details concerning the timing, conduct, and procedures with respect to the proposed sale in particular is far less critical, especially when the court is going to approve and oversee such procedures. No creditors / voters were called upon to "make an informed judgment about the Lender's Plan pursuant to Section 1125." (Objection to Confirmation, Dkt. #281, at p. 8; Post-Confirmation Brief, Dkt. #308, at p. 31).

Because Debtor's objections to BofA's Plan focus upon disclosure-related issues, and the court deemed the Lender's Plan sufficient for purposes of Sections 1125 and 1126, the court finds that the Lender's Plan complies with Section 1129(a)(2).

### Section 1129(a)(3) - Plan proposed in good faith and not by any means forbidden by law.

Section 1129(a)(3) requires that "[t]he plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). Section 1129(a)(3) does not define good faith.[19] Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.), 314 F.3d 1070, 1074 (9th Cir. 2002), cert. denied, 538 U.S. 1035 (2003); Beal Bank USA v. Windmill Durango Office, LLC (In re Windmill Durango Office, LLC), 481 B.R. 51, 68 (B.A.P. 9th Cir.2012).

A plan is proposed in good faith where it achieves a result consistent with the objectives and purposes of the Code. In re Sylmar Plaza, L.P., supra, 314 F.3d at 1074; In re Windmill Durango Office, LLC, supra, 481 B.R. at 68. "Good faith" under Section 1129(a)(3) is determined on a case-by-case basis, taking into account the totality of the circumstances of the case. In re Sylmar Plaza, L.P., supra, 314 F.3d at 1074-75;[20] In re Windmill Durango Office, LLC, supra, 481 B.R. at 68; In

---

[19]A legal distinction exists "between the good faith that is a prerequisite to filing a Chapter 11 petition and the good faith that is required to confirm a plan of reorganization." Pacific First Bank v. Boulders on the River, Inc. (In re Boulders on the River, Inc.), 164 B.R. 99, 103 (B.A.P. 9th Cir.1994); Stolrow v. Stolrow's, Inc. (In re Stolrow's, Inc.), 84 B.R. 167, 171 (B.A.P. 9th Cir. 1988). Under Section 1112(b), a Chapter 11 petition may be dismissed for cause "if it appears that the petition was filed in bad faith." In re Stolrow's Inc., supra, 84 B.R. at 170. "Bad faith [in filing a Chapter 11 petition] exists if there is no realistic possibility of reorganization and the debtor seeks merely to delay or frustrate efforts of secured creditors." In re Boulders on the River, supra, 164 B.R. at 103.

[20] In Sylmar Plaza, the Ninth Circuit rejected the use of per se rules in determining whether good faith exists, and upheld a finding of good faith where the debtor invoked a

re Stolrow's, Inc., supra, 84 B.R. at 172.

Debtor alleges that the Plan fails to maximize the value of the estate, seeks to avoid tax obligations, and effectuates an impermissible "gift" in furtherance of the Lender's efforts to take Debtor's equity for itself. Accordingly, Debtor argues that the Lender's Plan fails to satisfy Section 1129(a)(3)'s good faith requirement. (Objection to Plan, Dkt. #281, at pp. 9-11; Post-Confirmation Brief, Dkt. #308, at pp. 33-34). The court disagrees.

Debtor argues that "[t]he Lender's Plan serves to effectuate the Sale without complying with Section 363's requirements, this Court's oversight, or Nevada foreclosure law, with the dual goal of avoiding applicable sales tax and allowing Secured Lender to obtain for itself the equity in the Real Property, rather than disbursing it to Debtor's members." (Objection to Plan, Dkt. #281, at p. 11). First, there is no equity in the Property for the Lender to obtain. The property is valued below that of the Lender's claim. Moreover, if there are any sale proceeds once the claims have been resolved, the Lender's Plan states that revenues will be paid to Patel and Abelson. (Plan, Dkt. #126 at p. 9). Contrary to Debtor's arguments regarding Section 363 and lack of oversight, the Plan proposes that the court oversee the sale of the Property, the details of which have yet to be finalized. The court intends to actively oversee the proposed Sale and ensure that it is conducted consistent with the Code's mandates.

Debtor argues that Lender's Plan commits to pay Class 2, General Unsecured Creditors, in full (Plan, Dkt. #126, Section III (C)(2), at p. 8), but that

---

provision of the Code preventing a creditor from receiving a higher default interest rate under a loan agreement. In re Sylmar Plaza, L.P., supra, 314 F.3d at 1074-76. The court in Sylmar concluded that the debtor's filing for bankruptcy relief was consistent with the objectives and purposes of the Code, even though the case dealt primarily with a single creditor. Id.

such a commitment is problematic if Lender buys the Property at the sale using a credit bid.  (Objection to Plan, Dkt. #281, at p. 11).   Paying the creditors after buying the property constitutes a "gift."  (Id.)

> Here, the "gift" is designed to minimize objection to Secured Lender's efforts to take the equity in the Real Property for itself through a sale designed to minimize the value of the Real Property, thereby allowing Secured Lender to submit a credit bid and then, after the conclusion of the Chapter 11 Case, conduct proper marketing and sale mechanisms in order to obtain the actual value of the Real Property for itself. ... As Lender's Plan fails to maximize the value of the estate and effectuates an impermissible "gift" in furtherance of Secured Lender's efforts to take Debtor's equity for itself, Lender's Plan fails to satisfy Section 11219(a)(3)'s good faith requirement.

(Post-Confirmation Brief, Dkt. #308, at p. 34) (citations omitted).  Thus, Debtor alleges that Lender will intentionally create a sale situation to minimize the value of the Property, so that Lender can then conduct a second more appropriate sale and retain all of the "equity" in the Property for itself.  The court declines the invitation to participate in Debtor's conspiracy theory.

As noted previously, the value of the Property is significantly below the value of Lender's approved claim.  Moreover, the court will approve and oversee the sale procedure for the Property.  That oversight will ensure, to the extent possible, that the value of the Property is maximized at the sale.

The court concludes that the Lender filed its Plan in good faith.

### Section 1129(a)(4) - Payments to professionals and others.

Section 1129(a)(4) requires that fees for those working on a debtor's case be submitted to the court and be approved as reasonable.  11 U.S.C. § 1129(a)(4). Lender's Plan includes these provisions, and all fees approved to date have been allowed as interim, not final.  Future and final requests will likewise be submitted

15

to the court for review and approval.[21]  Section 1129(a)(4) is satisfied.  (Id.).

### Section 1129(a)(5) - Debtor's future officers and directors.

Section 1129(a)(5) requires a host of disclosures and approvals with regard to the postconfirmation management of the revested debtor.  This is appropriate; often prepetition management bears some of the responsibility for the debtor's filing, and creditors and equity security holders are entitled to know that history will not necessarily repeat itself.  As with section 1129(a)(4), the section contains a blend of disclosure and substantive requirements.

7 COLLIER ON BANKRUPTCY ¶ 1129.02[5], p. 1129-30 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev.2009).

A Chapter 11 plan may not be confirmed if the continuation in management of the persons proposed to serve as officers or managers of debtor is not in the interests of creditors and public policy.  11 U.S.C. § 1129(a)(5)(A)(ii).  See, e.g., In re Beyond.com Corp., 289 B.R. 138, 145 (Bankr. N.D. Cal. 2003).  Continued service by prior management may be inconsistent with the interests of creditors and public policy if it "directly or indirectly perpetuates incompetence, lack of discretion, inexperience or affiliations with groups inimical to the best interests of the debtor."  In re Linda Vista Cinemas, L.L.C., 442 B.R. 724, 735-36 (Bankr. D. Ariz. 2010) (citing In re Beyond.com Corp., 289 B.R. 138, 145 (Bankr. N.D. Cal. 2003)).

Section 1129(a)(5)[22] compels a number of disclosures relating to post

---

[21] Contrary to the Plan Section II(C), the Plan Administrator has no authority to review and approve professional fees.  The Code makes it clear that review and approval of such fees rests in the court.  11 U.S.C. §§ 327, 328, 330.

[22] 11 U.S.C.§ 1129(a)(5) provides that:

(A)(i) The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the

confirmation management of the reorganized debtor. "Section 1129(a)(5)(A)(i) requires the plan proponent to disclose two attributes of post-confirmation management: their identity; and their affiliations. ... The required disclosure must be of the 'director[s], officer[s], or voting trustee[s].' This leaves out analogous management for partnerships or limited liability companies." 7 COLLIER ON BANKRUPTCY ¶ 1129.02[5][a], p. 1129-31 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev.2009).

According to the Lender's Plan:

> [t]he Debtor shall remain in possession of the Assets and continue to run its business in the ordinary course until the Closing Date. After the Closing Date, the Debtor shall be further responsible for (a) dissolving the Debtor pursuant to applicable non-bankruptcy law; (b) making all reporting and other filings as required by the United States Trustee, and (c) closing the Chapter 11 Case. In the event that the Debtor fails to take any of the actions listed in this section, the Plan Proponent and the Plan Administrator may choose to take any of these actions in its sole discretion. In no event shall the Plan Proponent or the Plan Administrator be required to take any of the actions listed in this section, nor shall the Plan Proponent or the Plan Administrator be liable for the failure to take any action listed in this section, nor shall recourse be had to the Assets for the failure to take any action listed in this section.

(Plan, Dkt. #126, at p. 10). Thus, Debtor will continue in possession and operation of the Property until the Closing Date for the sale of the Property. (Id.). There has been no proof of mismanagement by Abelson, and the court sees no problem in retaining the Debtor in a management role for the short period of time proposed in

---

debtor, or a successor to the debtor under the plan; and
   (ii) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and
(B) the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.

17

the Lender's Plan.[23]  The disclosure is adequate.[24]

### Section 1129(a)(6) - Regulatory bodies.

Section 1129(a)(6) does not apply to Lender's Plan.

### Section 1129(a)(7) - Best interests of creditors.

Under Section 1129(a)(7), creditors with impaired claims must either accept the proposed Plan or receive as much from the Plan as they would under liquidation.  11 U.S.C. § 1129(a)(7)(A).  The Lender's Plan includes two impaired classes, Class 1 and Class 3.  (Plan, Dkt. #126, at p. 8).  Class 1 accepted the proposed Plan.  Class 3 is deemed to have rejected the Plan.  (Id.).

Although Class 1, BofA's claim, will not be paid in full under the Plan, Class 1 accepts the Plan.

Class 3 members, Membership Interest, are being stripped of their Membership Interests and their equity cancelled.  (Plan, Dkt. #126, at p. 9).  Class 3 will likely be paid nothing from the sale of the Property.  In a liquidation, Membership Interests would receive nothing.  Class 3 will realize the same under the Plan as it would on liquidation.

Since BofA approved the Plan and Class 3 will receive the same as it would

---

[23] To the extent that identification of the post-petition managers was compelled to provide adequate disclosure to creditors, the failure to do so constitutes harmless error.  No ballots were solicited or cast, so failure to inform prospective voters cannot constitute a material error.  Should the Debtor decide to voluntarily abandon the Property prior to the sale of the Property, the Lender will be required to seek court approval of new management.

[24] Debtor raises the specter of an unnamed designee as fodder for the previously disposed of argument that such a person / entity will have an incentive to minimize the sale price on the property, allowing the Lender to "capture the additional value instead of Debtor's members." (Objection to Confirmation, Dkt. #281, at p. 14).  For the reasons previously set forth, the court finds this argument unavailing.

under liquidation, the Plan complies with Section 1129(a)(7).

## Section 1129(a)(8) - Impairment and Acceptance

Under Section 1129(a)(8), for a plan to be confirmed, each class of claims or interests must either be unimpaired by the proposed plan, or it must accept the treatment proposed by the plan.  Class 3 is statutorily deemed to have rejected the Plan.  Accordingly, Section 1129(a)(8) has not been met in this case.

A plan may be confirmed even where Section 1129(a)(8) is not met, if "the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(1).  Whether the Lender's Plan is "fair and equitable" under Section 1129(b)(1) is discussed below.

## Section 1129(a)(9) - Administrative Claims

"Section 1129(a)(9)(A) requires that holders of administrative claims and gap claims be paid 'cash equal to the allowed amount of such claim' on the 'effective date of the plan[.]' " 7 COLLIER ON BANKRUPTCY ¶ 1129.02[9][a], p. 1129-43 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev.2010) (footnotes omitted).  Debtor argues that the Plan provides the Plan Administrator with discretion not to pay allowed administrative claims.  (Objection to Confirmation, Dkt. #281, pp. 14-15).  Debtor correctly points out that the Plan vests the Plan Administrator with discretion to modify the compensation that will be paid to professionals.

Notwithstanding the Plan's language, Code Sections 327, 328, and 330 make it clear that the court will review and be the final arbiter of whether professional fee requests are to be paid and in what amount.  Although the court finds the Plan Administrator review provision to be error, that error should not prevent

19

confirmation of the Lender's Plan. Accordingly, if Lender submits a modified plan reflecting the court's review and approval of the professional fees, Section 1129(a)(9) will be satisfied.

**Section 1129(a)(10) - Acceptance by at Least One Impaired Class**

Had anyone needed to vote on the Plan, the Plan proponent, Class 1, would have accepted its own Plan. Accordingly, Section 1129(a)(10) has been satisfied.

**Section 1129(a)(11) - Feasibility/Future Liquidation**

Section 1129(a)(11) requires that confirmation of the plan is not likely to be followed by liquidation, or the need for further financial reorganization of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan. 11 U.S.C. § 1129(a)(11); Sherman v. Harbin (In re Harbin), 486 F.3d 510, 517 (9th Cir. 2007). The feasibility requirement set forth in Section 1129(a)(11) requires that:

> "Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor ... unless such liquidation or reorganization is proposed in the plan." In re Harbin, 486 F.3d 510, 517 (9th Cir.2007); In re Roberts Rocky Mountain Equip. Co., Inc., 76 B.R. 784, 790 (Bankr.D.Mont.1987). The Ninth Circuit BAP has defined feasibility as a factual determination, and "as whether the things which are to be done after confirmation can be done as a practical matter under the facts."

In re Jorgensen, 66 B.R. 104, 108 (B.A.P. 9th Cir. 1986) (citing In re Clarkson, 767 F.2d 417 (8th Cir. 1985)); see also In re Ambanc La Mesa Ltd. P'ship, 115 F.3d at 657.

The plan proponent bears the burden of establishing the feasibility of its Plan by a preponderance of the evidence. In re Indian Nat'l Finals Rodeo, 453 B.R. 387, 402 (Bankr. D. Mont. 2011); Danny Thomas Prop. II Ltd. P'ship v. Bank (In re

20

1  Danny Thomas Prop. II Ltd. P'ship), 241 F.3d 959, 963 (8th Cir. 2001); see also In
2  re Young Broadcasting Inc., 430 B.R. 99, 128 (Bankr. S.D.N.Y. 2010).

3      The Lender's Plan is a liquidating plan.  As such, the normal factors that are
4  considered when evaluating whether a particular plan is feasible do not readily
5  apply.[25]  The court will oversee the Lender's sale efforts regarding the Property.
6  See CHS, Inc. v. Plaquemines Holdings, L.L.C., 735 F.3d 231, 240-41 (5th Cir.
7  2013).  The court finds that Lender will be able to sell the Property.  Consequently,
8  Lender's Plan is feasible.  There is no probability of default or financial
9  reorganization that Section 1129(a)(11) seeks to avoid.

**Section 1129(a)(12) - Fees.**

All required court and U.S. Trustees fees have been paid and are current.
Thus, Section 1129(a)(12) has been satisfied.

**Sections 1129(a)(13), (14), (15), and (16) - Retirement Benefits, Domestic Support Obligations, Individual Debtors, Transfers of Property.**

These provisions do not apply in this case.

**Section 1129(b)(2(C) - 'Unfair Discrimination' and 'Fair and Equitable'**

A plan is "fair and equitable" under Section 1129(b)(2)(C) if:

(C) With respect to a class of interests--

---

[25] The factors include: (1) the adequacy of the capital structure; (2) the earning power of the business; (3) economic conditions; (4) the ability of management; (5) the probability of the continuation of the same management; and (6) any other related matters which determine the prospects of a sufficiently successful operation to enable performance of the provisions of the plan.  In re Linda Vista Cinemas, L.L.C., supra, 442 B.R. at 738; In re Las Vegas Monorail, supra, 462 B.R. at 802; 7 Collier on Bankruptcy ¶ 1129.02[11], p. 1129-52 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev.2009).

21

(i) the plan provides that each holder of an interest of such class receive or retain on account of such interest peroperty of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled or the value of such interest; or

(ii) the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

11 U.S.C. § 1129(b)(2)(C)(i) and (ii).  Lender's Plan meets the requirements of both Section 1129(b)(2)(C)(i) and (ii).  To the extent that proceeds from the sale of the Property remain after payment of the other two creditor classes and the applicable administrative claims, the proceeds will be distributed to the holders of the Membership Interests.  (Plan, Dkt. #126, at p. 9; Post-Trial Memorandum, Dkt. #306, at pp. 21-22); 11 U.S.C. § 1129(b)(2)(C)(i).  As such, Section 1129(b)(2)(C)(i) has been met.  (Id.).  No creditor class exists below the Membership Interests, so Section 1129(b)(2)(C)(ii) has been met.  11 U.S.C. § 1129(b)(2)(C)(ii).

### Section 1129(c) - only one Plan of Reorganization may be confirmed.

Pursuant to Section 1129(c), the court may confirm only one plan.  11 U.S.C. § 1129(c).  If subsections (a) and (b) are met as to more than one plan, the court shall consider the preferences of creditors and equity security holders in determining which plan to confirm.[26]  (Id.)  As noted by the court in its Memorandum Decision

---

[26] In cases with multiple confirmable plans, the court "shall consider the preferences of creditors and equity security holders in determining which plan to confirm." 11 U.S.C. § 1129(c). In other cases involving multiple confirmable plans, courts have applied a four-factor analysis, considering "(1) the type of plan; (2) the treatment of creditors and equity security holders; (3) the feasibility of the plan; and (4) the preferences of creditors and equity security holders." In re ASARCO LLC, 420 B.R. 314, 326-27 (Bankr. S.D. Tex. 2009) (citing, In re Internet Navigator Inc., 289 B.R. 128, 131 (Bankr. N.D. Iowa 2003)); In re Holley Garden

Concerning Denial of Confirmation of Debtor's Second Amended Plan of Reorganization (Dkt. #349), Debtor's Second Amended Plan is not confirmable. Thus, Section 1129(c) does not apply in this case. It would be appropriate to offer conditional confirmation of Debtor's plan, were that possible. However, Debtor lacks the resources to propose a feasible plan. Feasibility is a much more serious hurdle for Debtor to overcome than any the relatively minor issues confronting Lender's liquidation plan.

Debtor's plan offers only seven years of uncertainty, and there is no evidence that it has the means to do better. Section 1129(c) does not apply in this case.

### Section 1129(d) - Avoidance of Taxes or Application of the Securities Act of 1933

Pursuant to Section 1129 (d), the court may not confirm a plan if the principal purpose of the plan is to avoid taxes or avoid application of Section 5 of the Securities Act of 1933. 11 U.S.C. § 1129(d). Debtor has supplied no evidence to support an argument that the principal purpose of Lender's Plan is tax avoidance.

### Section 1129(e) - Small Business Case.

The instant case is not a small business case, so Section 1129(e) does not apply in this case.

## CONCLUSION

Lender's Plan of Reorganization is essentially a foreclosure sale of Debtor's real property. The filing of Debtor's petition for Chapter 11 Reorganization prevented foreclosure under Nevada state law. However, Debtor lacks the resources to be able to propose a confirmable plan of its own.

---

Apartments, Ltd., 238 B.R. 488, 493 (Bankr. M.D. Fla. 1999).

Provided the Lender submits a modified plan as noted above, Lender's Plan will comply with the requirements of sections 1129(a) and (b) of the Bankruptcy Code.

The Plan, as modified, will comply with the requirements of Section 1129(a) and (b) and was proposed in good faith, as required by §1129(a)(3).

The Plan meets the 'best interests of creditors' requirement because it provides Membership Interests as much as they would receive in a Chapter 7 liquidation.

The requirements of §1129(a)(8) are met because Lender's Class 1 claim is impaired and would have voted for the Plan had a vote been required.

Feasibility is not an issue, as the Property is to be sold at public sale fairly quickly after confirmation of Lender's Plan.  11 U.S. § 1129(a)(11).

The plan is "fair and equitable" with respect to Membership Interests, Class 3. 11 U.S.C. § 1129(b)(1).

An Order will be entered conditionally confirming Lender's Plan, provided that 1) the Payment dates for General Unsecured Creditors is changed to reflect the Effective Date rather than the Closing Date; 2) that the exculpation provision for the Lender, Plan Administrator and their various unnamed representatives be removed from the plan; and, 3) that the court, not the Plan Administrator, will review and approve all of the professional fees.

The Lender's modified Plan must be filed on or before the close of business on Monday February 3, 2013.  Absent such a modified Plan, the court holds that the Lender's Plan is and should be Denied, based upon Lender's impairment of the General Unsecured Class by not paying them in full on the Effective date of the Plan, Lender's attempts to overreach and have its Plan Administrator assume the court's duties under the code with respect to the review and approval of professional

fees, and inclusion of a prohibited exculpation provision regarding the Lender, Plan
Administrator and their various representatives.

A separate order will be entered for the conditional confirmation of Lender's
Plan.

Copies noticed through CM/ECF and/or BNC to:

DOROTHY G. BUNCE on behalf of Interested Party Rick Abelson
    1bankruptcy@cox.net

TALITHA GRAY KOZLOWSKI on behalf of Debtor HORIZON RIDGE
    MEDICAL & CORPORATE CENTER, LLC
    bankruptcynotices@gordonsilver.com; bknotices@gordonsilver.com

KIRK D. HOMEYER on behalf of Debtor HORIZON RIDGE MEDICAL &
    CORPORATE CENTER, LLC

BANKRUPTCYNOTICES@GORDONSILVER.COM,

BKNOTICES@GORDONSILVER.COM

TERESA M. PILATOWICZ on behalf of Debtor HORIZON RIDGE MEDICAL
    & CORPORATE CENTER, LLC Bankruptcynotices@gordonsilver.com,
    bknotices@gordonsilver.com

U.S. TRUSTEE - LV - 11, 11

USTPRegion17.lv.ecf@usdoj.gov

JOHN ROBERT WEISS on behalf of Interested Party BANK OF AMERICA,
    N.A. AS SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL
    ASSOCIATION, AS TRUSTEE jrweiss@duanemorris.com,
    maolins@duanemorris.com; jjohnson3@duanemorris.com

MATTHEW C. ZIRZOW on behalf of Debtor HORIZON RIDGE MEDICAL &
CORPORATE CENTER, LLC mzirzow@lzlawnv.com,
susan@lzlawnv.com; tiffany@lzlawnv.com; carey@lzlawnv.com;
mary@lzlawnv.com

and sent to BNC to:

All parties on BNC mailing list

# # #