DOMINICA C. ANDERSON (SBN 2988)
**DUANE MORRIS LLP**
100 North City Parkway, Ste. 1560
Las Vegas, NV  89106
Telephone: 702.868.2600
Facsimile:  702.385.6862
E-Mail:  dcanderson@duanemorris.com

JOHN ROBERT WEISS (*Pro Hac Vice*)
**DUANE MORRIS LLP**
190 South LaSalle Street, Suite 3700
Chicago, IL 60603
Telephone: 312.499.6700
Facsimile: 312.499.6701
E-Mail: jrweiss@duanemorris.com

Attorneys for Creditor Bank of America, N.A., successor
by merger to LaSalle Bank National Association, as trustee
for the registered holders of GMAC Commercial Mortgage
Securities, Inc., Commercial Mortgage Pass-Through
Certificates, Series 2003-C1, acting by and through
CWCapital Asset Management LLC, Special Servicer

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re:

HORIZON RIDGE MEDICAL &
CORPORATE CENTER, LLC,

          Debtor.

Bankruptcy No.: BK-S-12-13906-btb
Chapter 11

**BANK OF AMERICA, N.A., AS TRUSTEE'S REPLY IN SUPPORT OF ITS MOTION FOR
ORDERS (A) APPROVING SALE PROCEDURES, (B) APPROVING RETENTION OF
THE BROKER, (C) SETTING A SALE HEARING DATE, AND (D) APPROVING THE
SALE OF THE DEBTOR'S ASSETS**

        Bank of America, N.A., successor by merger to LaSalle Bank National Association, as

trustee for the registered holders of GMAC Commercial Mortgage Securities, Inc., Commercial

Mortgage Pass-Through Certificates, Series 2003-C1, acting by and through CWCapital Asset

Management LLC, Special Servicer (the "*Lender*"), by and through its undersigned counsel, hereby

1

files this response in support of its Motion for Orders (A) Approving Sale Procedures, (B) Approving Retention of the Broker, (C) Setting a Sale Hearing Date, and (D) Approving the Sale of the Debtor's Assets [ECF No. 367] (the "*Motion*"), responding to the Debtor's Opposition to the Motion [ECF No. 393] (the "*Opposition*").  For the reasons stated herein, the Motion should be granted.

## I.    INTRODUCTION

On December 20, 2013, this Court entered its: (i) Memorandum Decision Concerning Denial of Confirmation of Debtor's Second Amended Plan of Reorganization [ECF No. 349] ("*Memorandum Decision Denying Confirmation of Debtor's Plan*"); (ii) Order Denying Approval of Debtor's Disclosure Statement [ECF No. 351]; and (iii) Order Denying Confirmation of Debtor's Second Amended Plan of Reorganization [ECF No. 353] (collectively, the "*Orders Denying Confirmation of Debtor's Plan*").  On January 3, 2013, this Court entered its Memorandum Decision Conditionally Granting Confirmation of the Plan of Liquidation for Debtor Horizon Ridge Medical & Corporate Center, LLC by Creditor Bank of America, N.A. as Trustee [ECF No. 356], and Order Conditionally Granting Confirmation of the Plan of Liquidation for Debtor Horizon Ridge Medical & Corporate Center, LLC by Creditor Bank of America, N.A. as Trustee [ECF No. 357] (collectively, the "*Orders Confirming Lender's Plan*").  On January 6, 2014, Lender filed its *First Amended Plan of Liquidation for Debtor Horizon Ridge Medical & Corporate Center, LLC By Creditor Bank of America, N.A. as Trustee* [ECF No. 366] (the "*Lender's Plan*"), making the changes required by this Court's Orders Confirming Lender's Plan.

Although the Debtor has filed a notice of appeal of the Orders Confirming Lender's Plan [ECF No. 379], it has not moved to stay the Orders Confirming Lender's Plan.  Similarly, although the Debtor has filed a Motion to Amend or Vacate Orders and to Reopen Evidence Pursuant to Federal Rules of Bankruptcy Procedure 9023 and 9024 [ECF No. 360] with respect to the Orders Denying Confirmation of Debtor's Plan, it has not moved to stay those orders.  Thus, the procedural posture of this Case is such that the Lender's Plan, which explicitly provides for sale of all of the Debtor's Assets[1] is in place.  Although the Debtor is attempting to use its Opposition to the Motion

---

[1]    Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

to mount yet another attack on the Lender's Plan in a futile attempt to retain control of the Assets, the Motion cannot be used as yet another bully pulpit from which the Debtor can cry foul yet again. The arguments raised in the Opposition are utterly without merit.  This is a single asset realty case that was filed on April 2, 2012.  It has been pending for nearly two years.  It must come to an end. To suggest that this case should extend for another year is absurd.[2]

## II.    DISCUSSION

### A.    Standard Appropriate For the Motion

The Debtor exerts a great deal of effort setting forth the standard for approving a sale, but seems to miss the point that the concept of a sale is already in place.  The Lender's Plan, which has been confirmed and has not been stayed, provides for a sale of the Assets.  There is no basis to conclude that something other than a sale is appropriate at this juncture.  The Debtor cannot use this Motion to re-litigate matters that have already been decided.  On February 6, 2014, this Court will consider the sale procedures and whether they are appropriate, and the retention of the Broker.[3] While cases decided under section 363 of the Bankruptcy Code are persuasive, the Debtor's citations to cases such as *Comm. of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063 (2d Cir. 1983), which considered whether a sale should be approved prior to acceptance of and outside of any plan of reorganization, are not helpful.  *See also In re Work Recovery, Inc.*, 202 B.R. 301 (Bankr. D. Az. 1996) (debtor permitted to sell surplus property outside of a plan of reorganization); *In re Wilde Horse Enters., Inc.*, 136 B.R. 830 (Bankr. C.D. Cal. 1991) (at issue was the fee application of debtor's attorney; court addressed standards for sale outside of a plan of reorganization and when an attorney is required to disclose a sale to an insider).  Many of the cases that the Debtor cites are in fact Bankruptcy Rule 9019 motions to approve settlements,

---

[2]    As promised to the Court, counsel for the Lender contacted Debtor's counsel shortly after the Motion was filed and invited her to open a dialogue as to appropriate sale procedures. Lender's counsel specifically suggested to her that she would likely find fault with the thirty day marketing period and advised her that the Lender would consider a longer period. Debtor's counsel never responded before filing the Opposition.

[3]    The Opposition does not raise any objection to the retention of Commerce Real Estate Solutions to act as broker for the Assets.

1  which apply the section 363 sale standard in the analysis of whether the settlement should be

2  approved.  *See, e.g., Slates v. Reger (In re Slates)*, 2012 Bankr. LEXIS 5159 (9th Cir. B.A.P. Oct.

3  31, 2012).  Other cases the Debtor cites consider particular sale issues, such as use of funds for

4  personal use.  *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14 (9th Cir. B.A.P. 1988) (issue was

5  whether individual debtor could use pension fund for personal purposes; use of pension fund

6  considered under section 363(b)).  None of these address a sale pursuant to a confirmed plan or

7  whether particular sale procedures are adequate.

8      The issues that this Court must address concern whether the proposed Sale Procedures are

9  adequate.  The length of the marketing period and how the property will be marketed, and whether

10  the proposed procedures allow a fair opportunity for prospective purchasers are all relevant

11  inquiries.  *See, e.g., In re Sonrisa Realty Partners, Ltd.*, Case No. 10-80026, 2011 Bankr. LEXIS

12  1733 (Bankr. S.D. Tex. 2011) (addressing sale conducted pursuant to a lender's plan; debtor

13  objected to procedures, arguing that they did not afford sufficient time to allow bidders to perform

14  due diligence and bid; court approved auction procedures over debtor's objection).[4]  In *Sonrisa*, the

15  auction was held eighty days after the auctioneer was hired.  The auctioneer testified that a

16  minimum period of time for an auction was 75 days, and that 80 days from when the auctioneer was

17  hired was sufficient time to conduct the auction.  A property information package was sent to

18  potential bidders 30 days before the auction.  The court held that the sale procedures were sufficient

19  and approved them.

20      The Sale Procedures in this case are more than adequate.  They will provide six to eight

21  weeks for marketing not from when the Broker is hired, but from when the marketing materials are

22  prepared and actually disseminated.  The due diligence package will be completed and available

23  from the time the marketing period commences.  The Broker believes that this is the optimal time

24  period for an auction scenario such as that proposed here.

25

26

27  [4]   This is the only case cited by the Debtor that actually addresses a sale pursuant to a plan and
28  adequate sale procedures thereunder.

**B.    The Sale Procedures Maximize Value and Are in Good Faith**

The Debtor's main concern appears to be the length of the marketing period; the Debtor believes that the marketing period should be six to twelve <u>months</u> to allow for the Assets to increase in value and to increase the odds that there may be a return to equity. There is no basis for extending the marketing period to six to twelve months for the benefit of equity holders.  The Debtor argues that the Property is increasing in value, and submits a new valuation for the Property. The new valuation should not be considered, and in any event is not credible and irrelevant.  A marketing period of six to eight weeks is sufficient.  (*See* Declaration of Danielle Steffen, ¶ 4.)

**(1)    The Value of the Property Should Not Be Reconsidered**

There is no basis at this juncture to revalue the Property at all, let alone to conduct a new valuation in order to determine the appropriate length of marketing time for an asset sale in bankruptcy.  There must be some finality to this case.  At every opportune moment, the Debtor has come into Court with some "new" evidence seeking to undo what has already been done.  The Debtor came into Court in September 2013 at the Confirmation Hearing with an allegedly new lease for Suite 201 and a lease proposal for Suite 205.  On January 3, 2013, the Debtor filed its Motion to Amend or Vacate Orders and to Reopen Evidence Pursuant to Federal Rules of Bankruptcy Procedure 9023 and 9024 [ECF No. 360] (the "*Debtor's Motion to Amend or Vacate Orders*"), seeking to reopen the evidence with respect to the Orders Denying Confirmation of Debtor's Plan so that leases for Suites 100 and 105 could be considered.  Just this week, on January 29, 2014, the Debtor has filed two addenda to leases for Suites 200 and 203 [ECF No. 406], which also allegedly support the Motion to Amend or Vacate Orders—all in an effort to change the result of the Confirmation Hearing and over a year's worth of hard-fought litigation.  The Debtor now seeks a new valuation for the Property.  With respect to value, after developing a complete record of expert testimony and legal argument, the Court entered an Order Determining the Fair Market Value of Debtor' Real Property For Purposes of Plan Confirmation on February 22, 2013 [ECF No. 223] (the "*Valuation Order*").  The Court determined the fair market value of the Property to be $3,975,000. What the Debtor is actually asking for is relief from the Valuation Order pursuant to Federal Bankruptcy Rule of Procedure 9024 and Federal Rule of Civil Procedure 60.  It has not followed

the correct procedure for such a request, and even if it had, there is no basis for such relief. The declaration of Keith Harper and the "Second Appraisal" should be stricken.

### (2) The Correct Marketing Period For the Property is Six to Eight Weeks

Even assuming that the value of the Property is increasing, bankruptcy sales simply do not go on for a full year. The Debtor does not cite a single case that calls for a delayed sale for an asset that is supposedly "increasing in value," or for a marketing period of one year in bankruptcy. The Debtor's argument as to what is a "normal sale context" does not describe a distressed sale out of bankruptcy such as this. And that is what we have here regardless of the length of the marketing period—a distressed sale. The Lender's proposed Broker, Danielle Steffen of Commerce Real Estate Solutions, testified at her deposition that an appropriate marketing period is six to eight weeks, and the Lender proposes to amend the Sale Procedures to provide for the marketing period the Broker feels is best.[5] The marketing period would commence after due diligence and marketing materials were prepared, and marketing materials sent to prospective purchasers. (*See* Declaration of Danielle Steffen, ¶ 4.) This timing has due diligence built in to the marketing period for an auction sale and not tacked on to the end of a marketing period as it would in a non-auction scenario. (*See* Declaration of Danielle Steffen, ¶ 4.)

In the case of the Assets, it is preferable to begin the marketing and sale as quickly as possible. Because of the nature of the Debtor's leases, time is not on the Debtor's side. Even considering the new leases and addenda offered by the Debtor, of the 16 suites that are occupied by tenants (there are 18 total suites, with one leasing office and one conference room), four expire in 2014, two more in April of 2015, and one in October of 2015. If these leases are considered on a square foot basis, leases for 9,610 square feet of space (of a total of 26,627 square feet of space), or

---

[5]     The Debtor selectively quotes from Ms. Steffen's deposition transcript, and attaches only a portion of her testimony. A full copy of Ms. Steffen's transcript is attached to the Declaration of Rosanne Ciambrone as Exhibit A. The two sales that Ms. Steffen mentioned that were described by the Debtor (Opposition at p. 12-13) were not distressed sales. Ms. Steffen further testified that for an auction scenario, six weeks to sixty days was the "optimal time to maximize value," and that this time frame in an auction scenario is very effective. Dep. Tr. at p. 29.

1  37% of the property, will expire in the next fifteen months.[6]  (*See* Declaration of Danielle Steffen,

2  ¶ 5.)  As the expiration of these lease terms approaches, the Property is devalued, and an investor

3  will require a higher capitalization rate to minimize the risk.  The sale price will not increase.  (*See*

4  Declaration of Danielle Steffen, ¶ 5.)  Given the nature of this Property, an extended marketing

5  period to allow purchasers to obtain financing is not necessary.  In Ms. Steffen's experience, with

6  investment properties like the Property, prospective purchasers are cash buyers who do not need

7  financing, and financing does not come into play.  (*See* Declaration of Danielle Steffen, ¶ 6.)

8         As to the new leases, none of them will increase the value of the Property.  The leases for

9  Suites 102 and 105 have been filed under seal, as well as lease addenda for Suites 200 and 203.

10  However, a review of the November 2013 Rent Roll, which was filed with this Court and is

11  available on the ECF/Pacer system, reveals that the rent for Suite 205 is $1.22 per square foot

12  modified gross, which is 34% below market value, and below the rents received for leases

13  completed in 2010 and 2011.  (November 2013 Monthly Operating Report, ECF No. 389, p. 8.)

14  According to the Cushman & Wakefield Fourth Quarter 2013 Office Market Report, the market rate

15  for a Class B Office Building such as the Property is $1.85/SF on a gross basis ($1.35/SF on a net

16  basis).  (*See* Declaration of Danielle Steffen, ¶ 7.)  The Property is an income producing property;

17  additional leases at below market rents will not increase the price for which it will sell.  (*See*

18  Declaration of Danielle Steffen, ¶ 8.)

19         In the Opposition, the Debtor argues that the value of the Property has increased because the

20  net operating income of the Property has increased by approximately $3,700 (from $341,654 to

21  $345,352).  This is $308 per month.  This *de minimis* increase in monthly rent will not translate to a

22  higher bid at an auction; indeed, because it may signal that the new leases are below market value,

23  consistent with the lease for Suite 205, it may actually harm value at an auction.  New leases at

24  below market value will not increase value after a longer marketing period.  (*See* Declaration of

25  Danielle Steffen, ¶ 9.)  Even though the real estate market may be improving to the extent that there

---

[6]     Previous to the most recent addenda to the leases for Suites 200 and 203 (which were set to expire in 2014), leases for 15,279 square feet of space expired before October of 2015.  This is 57% of the Property.

is a higher volume of sale and lease transactions (Opposition at p. 8; Steffen Dep. Tr. at pp. 14-15), this does not translate to an increase in sale or lease prices. Volume is increasing because properties are discounted. (*See* Declaration of Danielle Steffen, ¶ 10.) And while the Debtor attempts to use "conversations" that Mr. Harper had with various third parties, such interviews are clearly hearsay and should not be considered.

Contrary to the Debtor's unsupported statement (Opposition at pp. 11-12), section 363 does not mandate an extra-long marketing period to allow a distribution to equity. The Debtor conveniently has failed to acknowledge that the Lender is *undersecured* and equity has no value.[7] Bankruptcy cases must come to an end, as must this one. The Debtor does not get the benefit of an extra year to see if it can improve its lot. The Lender's Plan has been confirmed and the case must conclude.

### C.    Notice of the Motion Was Sufficient and Notice of the Sale Will Comply With All Rules

The Debtor argues that the Lender has not complied with Federal Rule of Bankruptcy Procedure 6004(c) and Local Rule 9014(b). Federal Bankruptcy Rule of Procedure 6004(c) requires that notice of a proposed sale outside the ordinary course of business shall be given in accordance with Rule 2002(a)(2), (c)(1)[8], and (k). Rule 2002(a)(2) requires that all creditors be given 21 days' notice of a sale; Rule 2002(c)(1) requires that the notice "include the time and place of any public sale, the terms and conditions of any private sale, and the time fixed for filing objections. The notice of a proposed sale is sufficient if it generally describes the property." Rule 2002(k) requires that the United States Trustee be given notice. While the Debtor argues that Local Rule 9014(b) requires the Lender to serve a copy of the actual motion with the notice of hearing, the Lender does not see that requirement in the Local Rule. In fact, Local Rule 9014(b) requires "a brief description in the notice of the relief sought" and cites to Rule 2002(c), which has a similar

---

[7]    If the Debtor's principal is entering into leases at below market rents, harming the value of the Property in an attempt to retain his own equity interests, he may be breaching his fiduciary duties to creditors. The Lender reserves all rights it may have with respect to such actions, including, without limitation, bringing a motion to appoint a trustee.

[8]    While Rule 6004(c) also requires compliance with Rule 2002(i) if applicable, Rule 2002(i) is not applicable as there is no committee in this case.

provision for sale notices as described above.

What the Debtor obfuscates is that (1) the hearing on February 6, 2014 <u>is not the sale hearing</u>, and (2) the Lender, in an effort to make sure all parties were apprised of the proposed sale, served the notice of hearing for the February 6, 2014 hearing *on all creditors listed in the Debtor's creditor matrix*. In fact, the actual sale hearing is to be set on February 6, 2014, and the proposed order for the February 6, 2014 hearing has a provision in it requiring that the Sale Procedures Order and all exhibits to it be served on all creditors, interest holders and parties to executory contracts and unexpired leases, among others. (Motion, Ex. D, Proposed Sale Procedures Order at ¶ 5.) All parties will have the opportunity to object; an objection deadline is included in the Sale Procedures Order. (Motion, Ex. D, Proposed Sale Procedures Order at ¶ 7.) The Sale Procedures also provide a separate mechanism for notice to go to holders of executory contracts and unexpired leases, which will include a proposed cure amount for assumed contracts and leases and an objection deadline. (Motion, Ex. A, Proposed Sale Procedures, ¶ 8.) At this point, because the sale hearing has not been set and the procedures have not been approved, the Lender is not able to comply with Bankruptcy Rules 6004 or 2002 or Local Rule 9014. The Lender certainly intends to comply with all notice requirements for a sale and will include anything that this Court may require in the notice that it provides. No party, including parties to executory contracts and unexpired leases, will be without notice and an opportunity to object.

### D.  The Argument That Causes of Action Were Not Adequately Retained in the Lender's Plan Was a Matter for the Confirmation Hearing and Has No Merit

The Debtor argues that the sale should not be approved because the Lender's Plan, which has been confirmed and not stayed, did not appropriately retain causes of action. The Debtor argues vaguely that a reservation of rights with respect to causes of action must be specific and unequivocal. The argument has no merit here where the Lender's Plan is now confirmed, and although the Debtor has filed a notice of appeal of the Orders Confirming Lender's Plan [ECF No. 379], the Orders Confirming Lender's Plan have not been stayed. A chapter 11 plan is effective and can be implemented fourteen days after the order confirming the plan is entered, even where an appeal is filed, unless a stay is granted pending appeal. *Manges v. Seattle First National Bank (In*

1  *re Manges)*, 29 F.3d 1034 (5th Cir. 1994)( "A stay not sought, and a stay sought and denied, lead

2  equally to the implementation of the plan of reorganization."); *In re Good*, 428 B.R. 235, 244 and

3  n.10 (Bankr. E.D. Tex. 2010) ("A Chapter 11 reorganization plan is 'effective' and can be

4  implemented—even in the face of an appeal—unless a stay is granted pending the appeal.").

5          A "confirmed reorganization plan operates as a final judgment with res judicata effect." *In

6  re Crown Vantage, Inc.*, 421 F.3d 963, 972 (9th Cir. 2005) (quoting *Unsecured Creditors Comm. v.

7  Southmark (In re Robert L. Helms Construction & Dev. Co., Inc.)*, 139 F.3d 702, 704 (9th Cir.

8  1998)).  It is well-settled that "a collateral attack against a confirmed plan is impermissible." *In re

9  California Litfunding*, 360 B.R. 310 (Bankr. C.D. Ca. 2007) (citing *Trulis v. Barton*, 107 F.3d 685,

10  691 (9th Cir. 1995)) (noting that post-confirmation attacks on a reorganization plan must be direct,

11  as collateral attacks on the plan are unavailable)).  An objecting party may not characterize a

12  collateral attack on a reorganization plan as an independent cause of action or an objection to a

13  motion unrelated to plan confirmation. *California Litfunding*, 360 B.R. at 317-18 (citing *In F&M

14  Marequet Nat'l Bank v. Emmer Brothers Co. (In re Emmer Brothers Co.)*, 52 B.R. 385 (D. Minn.

15  1985)).  To raise identical plan issues in a different forum in contravention of a confirmed plan is an

16  impermissible collateral attack on the plan. *Crown Vantage*, 421 F.3d at 973.  Here, the Debtor's

17  inclusion of this argument in the Opposition is simply a restyling of an objection to the confirmed

18  Plan as a separate objection to the Motion.  This should not be permitted.

19          Even addressing the argument on the merits, it is not valid.  While the Lender does not

20  quibble with the general jurisprudence that the reservation of causes of action must be express, the

21  Lender's Plan did contain an express retention of causes action, and avoidance actions in particular.

22  Not a single case cited by the Debtor is from the United States Court of Appeals for the Ninth

23  Circuit or Nevada, and most discussed whether a creditor or reorganized debtor had standing to

24  pursue a specific cause of action. *Wooley v. Haynes & Boone, L.L.P. (In re SI Restructuring Inc.)*,

25  714 F.3d 860 (5th Cir. 2013) (court considered whether plan was specific enough to preserve state

26  law cause of action against debtor's counsel and certain directors; the court held that retention of

27  "avoidance actions" that were defined as "any and all rights, claims and causes of action arising

28  under any provision of Chapter 5 of the Bankruptcy Code was specific, but that cause of action

against law firm and directors was not and creditor did not have standing to pursue this claim); *Dynasty Oil and Gas, LLC v. Citizens Bank (In re United Operating, LLC)*, 540 F.3d 351 (5th Cir. 2008) (reorganized debtor did not have standing to bring post-confirmation action for maladministration of estate's property during the bankruptcy as it was not specifically retained in the plan); *Paramount Plastics, Inc. v. Polymerland, Inc. (In re Paramount Plastics, Inc.)*, 172 B.R. 331 (Bankr. W.D. Wash. 1994) (plan not specific enough to retain preference actions where there was no mention of preference actions, but only "allowance or disallowance of claims or interests"; debtor did not have standing to pursue claims).[9]   None comes close to holding that the failure of a plan to adequately retain causes of action can somehow be grounds for denying a sale motion, and none addresses a retention provision such as that contained in the Lender's Plan.

Many courts, including the United States Bankruptcy Appellate Panel of the Ninth Circuit, have held that general language is sufficient to preserve causes action, and in particular, avoidance causes of action.  *Alary Corp. v. Sims (In re Associated Vintage Group, Inc.)*, 283 B.R. 549 (B.A.P. 9th Cir. 2002) (rejecting creditor's argument that chapter 11 plan was not sufficiently specific in its reservation of rights to object to claims and prosecute avoidance actions); *Kmart Corp. v. Intercraft Co. (In re Kmart Corp.)*, 310 B.R. 107, 125 (Bankr. N.D. Ill. 2004) (plan language excepting from waiver and reserving/retaining all avoidance claims pending on effective date was sufficient to preserve claim); *Cohen v. TIC Fin. Sys. (In re Ampace Corp.)*, 279 B.R. 145, 160-61 (Bankr. D. Del. 2002) (a general reservation in a plan indicating the type or category of claims to be preserved should be sufficiently specific to provide creditors with notice that their claims may be challenged post-confirmation).  Notably, in *Associated Vintage*, the Bankruptcy Appellate Panel of the Ninth Circuit held that Section 1123(b)(3) does <u>not</u> require strict specificity with respect to the retention of causes of action in a plan and, further advised that the court "agree[s] with the other courts that regard it as impractical and unnecessary to expect that a disclosure statement and plan must list

---

[9]   In two cases cited by the Debtor, the courts addressed whether a plan could assign or transfer avoidance actions to someone other than a debtor; both concluded that avoidance actions can be assigned or transferred.  *McFarland v. Leyh (In re Texas General Petroleum Corp.),* 52 F.3d 1330 (5th Cir. 1995); *Kroh Brothers Development Co. v. United Missouri Bank of Kansas City* (*In re Kroh Brothers Development Co.),* 100 B.R. 487 Bankr. W.D. Missouri 1989).

each and every possible defendant and each and every possible theory," in order to appropriately retain causes of action under a plan.  *Associated Vintage*, 283 B.R. at 564 (citing, *e.g.*, *Ampace Corp.*, 279 B.R. at 158-59).

Beyond finding that general language in a plan is sufficient to preserve causes of action, courts (including those in the Ninth Circuit) have explicitly recognized "the danger of engrafting an unduly burdensome specificity requirement onto the § 1123(b)(3) authorization for the retention and enforcement of claims belonging to the estate."  *Associated Vintage*, 283 B.R. at 564 (noting that, among other things, an unduly burdensome specificity requirement would "eviscerate the flexibility" of chapter 11 plans and could create potential opportunities for collusion with insider recipients of otherwise avoidable transfers).  *See also O'Halloran v. PricewaterhouseCoopers LLP*, 969 So. 1d 1039 (Fla. 2nd DCA 2007) (court "declin[ed] to impose . . . an exacting rule of specificity," whereby "the naming of each cause of action [would be] required for effective retention of the debtor's claims," noting that requiring strict specificity would "unduly complicate the reorganization process and would be unrealistic," and could result in significant delay(s) related to plan confirmation).

The Lender's Plan is specific enough to retain causes of action.  The Lender's Plan defines "*Causes of Action*" as:

> all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims and crossclaims (including, without limitation, all claims and any avoidance, recovery, subordination or other actions against Insiders and/or any other entities under the Bankruptcy Code, including Avoidance Actions) of any of the Debtor, the Debtor-in-Possession, and/or the Estate against any entity, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative or otherwise and whether asserted or unasserted as of the Effective Date.

(Lender's Plan, Article 1(A)(11).)  "*Avoidance Actions*" are defined as

> any and all avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of the Debtor or the Estate under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies under sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code.

(Lender's Plan, Article 1(A)(5).)  In turn, Article VII of the Lender's Plan provides:

1.    Vesting _and Transfers of Causes of Action_

(a)    Except as otherwise provided in the Plan or Confirmation Order, in accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtor or the Estate may hold against any Entity shall vest upon the Effective Date in the Plan Proponent.  Upon the Effective Date, the Plan Proponent shall have the exclusive right to institute, prosecute, abandon, settle or compromise any Cause of Action.  Causes of Action, and any recoveries therefrom, shall remain the sole property of the Plan Proponent.  Each Cause of Action is expressly reserved for later adjudication by the Plan Proponent (including, without limitation, Causes of Action not specifically identified or described) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of _res judicata_, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order.  In addition, the right to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits, is expressly reserved.

(b)    Any Entity to whom the Debtor has incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from the Debtor or a transfer of money or property of the Debtor, or who has transacted business with the Debtor, should assume that any such obligation, transfer, or transaction may be reviewed by the Plan Proponent subsequent to the Effective Date and may be the subject of a Cause of Action after the Effective Date, regardless of whether:  (i) such Entity has filed a proof of Claim against the Debtor in the Chapter 11 Case; (ii) an objection to any such Entity's proof of Claim has been filed; (iii) any such Entity's Claim was included in the Schedules; (iv) an objection to any such Entity's scheduled Claim has been filed; or (v) any such Entity's scheduled Claim has been identified as disputed, contingent or unliquidated.

(Lender's Plan, Article VII(1).)  There is no doubt that causes of actions are sufficiently preserved under Chapter 5 of the Bankruptcy Code.  The Motion does not have to be amended to remove the Causes of Action.  Whatever right the estate may have to them, those rights will be sold.

**E.    The Procedure for Executory Contracts Is Sufficient**

The Debtor argues that the Lender's Plan "permitted no definitive treatment" of executory contracts and unexpired leases, and that the Sale Procedures do not establish a sufficient procedure for assumption and rejection.  The Debtor's issue with respect to the Lender's Plan should not be heard here for the same reasons that the argument on causes of action should not be heard—a collateral attack on the Lender's Plan should not be permitted in the context of the Motion.  In any event, the arguments raised by the Debtor as to the treatment of Executory Contracts in the Lender's Plan and the Sale Procedures fail to acknowledge the clear procedure that is in place to address assumption or rejection.

Article VII of the Lender's Plan specifically dealt with the "Treatment of Executory Contracts and Unexpired Leases." It provides that (i) in connection with the proposed sale, the Plan Administrator may assume, assume and assign, or reject, executory contracts and unexpired leases, and (ii) any executory contracts or unexpired leases not expressly assumed will be rejected as of the closing date of the sale. (Lender's Plan, Article VII (A) and (B).) A specific procedure is provided for claims arising out of rejection. (Lender's Plan, Article VII (C).) The Sale Procedures in addition provide for (i) prospective purchasers to identify executory contracts or unexpired leases that they wish to assume, (ii) notice to the holders of such contracts and leases of assumption or rejection, and (iii) the ability of the holders to object and to file rejection damages claims. The assumption or rejection of executory contracts and unexpired leases will be considered by the Court at the Sale Hearing. The procedure complies with section 365 of the Bankruptcy Code. There is no failure to secure court approval. Should an issue arise with the rejection of a lessee's lease under section 365(h) (which may or may not occur), the Lender will comply with the requirements of section 365(h) of the Bankruptcy Code.[10]

### F.    Identification of the Plan Administrator

The Lender's Plan provides that either the Lender as Plan Proponent or its designee will be the Plan Administrator. (Lender's Plan, Article I.A., ¶ 33) (defined terms as stated in the Lender's Plan). Thus, the Plan Administrator has been disclosed: it is the Lender until the Lender designates someone else, which would be disclosed in an appropriate filing with this Court.

For all of the reasons stated herein and in the Motion, the Lender respectfully requests that this Court (i) approve the Sale Procedures and Auction notice; (ii) approve retention of the proposed Broker; (iii) set a hearing to consider confirmation of the sale to be held at the Auction; (iv) after consideration, approve the sale; and (v) grant such other and further relief as the Court deems appropriate.

---

[10] As the Lender has advised the Court and Debtor's Counsel, in the event that it is the winning bidder at the auction, the Lender will assume all executory contracts and unexpired leases.

1

2  DATED: January 31, 2014          DUANE MORRIS LLP

3

4  By:  /s/ John Robert Weiss
        John Robert Weiss

5      Attorneys for Bank of America, N.A., successor by
       merger to LaSalle Bank National Association, as
6      trustee for the registered holders of GMAC
       Commercial Mortgage Securities, Inc., Commercial
7      Mortgage Pass-Through Certificates, Series 2003-C1,
       acting by and through CWCapital Asset Management
8      LLC, Special Servicer

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28