GORDON SILVER
GERALD M. GORDON, ESQ., NV Bar No. 229
E-mail: ggordon@gordonsilver.com
TALITHA GRAY KOZLOWSKI, ESQ., NV Bar No. 9040
E-mail: tgray@gordonsilver.com
TERESA M. PILATOWICZ, ESQ., NV Bar No. 9065
E-mail: tpilatowicz@gordonsilver.com
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Telephone (702) 796-5555; Facsimile (702) 369-2666
*Attorneys for Debtor*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>HORIZON RIDGE MEDICAL & CORPORATE CENTER, L.L.C.,<br><br>Debtor. | Case No.: BK-S-12-13906-BTB<br>Chapter 11<br><br>Date:  OST Pending<br>Time: OST Pending |

**EMERGENCY MOTION SEEKING A STAY PENDING APPEAL OF THE ORDER (A) APPROVING SALE PROCEDURES; (B) APPROVING RETENTION OF BROKER; AND (C) SETTING A SALE HEARING DATE**

Horizon Ridge Medical & Corporate Center, L.L.C. ("HRMC"), by and through its undersigned counsel, hereby respectfully submits its motion for stay (the "Stay Motion") in the above-referenced Chapter 11 Case. HRMC requests that the Court stay the Orders (as defined herein) pending resolution of the appeal from the *Order (A) Approving Sale Procedures, (B) Approving Retention of the Broker, and (C) Setting a Sale Hearing Date* (the "Sale Order") and the *Memorandum Concerning Motion of Bank of America, N.A., as Trustee, Motion for Orders Concerning Sale Procedures, Broker Retention, and Sale of HRMC's Assets* (the "Memorandum," and together with the Procedures Order, the "Orders") entered on March 5, 2014 [ECF Nos. 433 and 432]. The Orders permit Lender to proceed with a liquidation sale of HRMC's real property (the "Center") on May 14, 2014, thereby severely limiting or completely terminating HRMC's ability to successfully reorganize its viable business.

This Motion is made and based on the memorandum of points and authorities provided herein, the declarations of Dr. Rick Abelson previously filed as ECF No. 453 (the "Abelson

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103876-001/5059966_4

Decl.") and as submitted concurrently (the "Second Abelson Decl.") herewith, as well as the previously filed declarations of Keith Harper (the "Harper Decl.") [ECF No. 395], and Wes Drown (the "Drown Decl.") [ECF No. 455], the pleadings, papers, and other records on file with the clerk of the above-captioned Court, judicial notice of which is hereby respectfully requested, and the argument of counsel entertained by the Court at the time of the hearing on the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The Court confirmed Lender's[1] Amended Liquidation Plan, which provided for a sale of HRMC's assets, but was entirely devoid of any proposed sale procedures or other information regarding the sale. Even worse, absolutely no evidence was presented at the confirmation hearing regarding the sale other than the sale mechanisms were "TBD" – to be determined. Then, *after* confirmation of the Amended Liquidation Plan, Lender presented, for the first time, its proposed sales procedures through *Bank of America, N.A., as Trustee's Motion for Orders (A) Approving Sale Procedures, (B) Approving Retention of the Broker, (C) Setting a Sale Hearing Date, and (D) Approving the Sale of the HRMC's Assets* (the "Sale Motion") [ECF No. 367].

Despite the strongly contested factual issues related to an appropriate exposure period for the sale, the Court approved the proposed procedures (the "Sales Procedures")[2] without allowing any evidence to be presented on the proposed procedures.[3] The Court's decision to deny HRMC's request for an evidentiary hearing is clear error where findings regarding an appropriate exposure period are critical to fair and reasonable sales procedures. Rather than take evidence, in approving Sales Procedures that fail to maximize the value of the Assets, the Court apparently merely accepted the unreasonably brief period proposed by Danielle Steffen, Lender's broker, set forth *for the first time* in Lender's reply brief [ECF No. 412] and in a declaration submitted to the Court *just four business days before the hearing* on the Sale Motion. HRMC

---

[1] "Lender" is defined as Bank of America, N.A., successor by merger to LaSalle Bank N.A., as trustee.

[2] The Sales Procedures are attached to the Sale Motion as Exhibit "A."

[3] It is unclear whether the Court considered all of the declarations submitted in connection with the Sale Motion or opposition thereto. However, what is clear is that the Court did not allow any live testimony or cross-examination.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103876-001/5059966_4

2

did not have an opportunity to respond to the revised procedures set forth in Lender's reply or to respond to Ms. Steffen's declaration prior to the Sale Motion hearing and was denied its right to cross-examine Ms. Steffen at the hearing. Thus, the Court committed clear error and its Orders must be reversed on appeal.

Furthermore, the stay is necessary in this case (the "Chapter 11 Case") to preserve the status quo during an appellate review, especially where the Center's tenancy has increased to 95%, the Center's value has increased by at least $100,000 over the course of the Chapter 11 Case, and HRMC's financial performance continues to improve. Therefore, *Lender will not be harmed* given the increase in HRMC and the Center's performance, the stable tenant base, the increasing leasing market for medical and corporate rentals, and the continuing monthly adequate protection payments – nearly $475,000 to date in this Chapter 11 Case. However, the sale of HRMC's sole asset under unfair and unreasonable sales procedures will be devastating to HRMC as it will cause the loss of real property which, by definition, is unique and potentially rendering a reorganization impossible. As such, this Court should issue a stay.

## II. JURISDICTION AND VENUE

The Court has subject matter jurisdiction with respect to this Motion as a "core" proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (L), and (O) and subject matter jurisdiction over this Stay Motion pursuant to Bankruptcy Rule 8005. See Ho v. Dai Hwa Electronics (In re Ho), 265 B.R. 603 (9th Cir. BAP 2001).[4]

## III. FACTUAL BACKGROUND

A. **HRMC's Operation of the Horizon Ridge Medical Center.**

1. HRMC was formed in 1999 with the goal and purpose of finding land to build a medical complex, designing and building a medical complex, and ultimately operating that medical complex. See Abelson Decl., ¶ 3.

. . .

---

[4] Pursuant to LR 9014.2, HRMC consents to this Court's entry of final orders and judgments related to this Stay Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103876-001/5059966_4

3

2. After nearly fifteen years of significant hard work and investment, HRMC owns and operates the Horizon Ridge Medical Center (the "Center"), a two-story, twenty-one office building located at 2610 W. Horizon Ridge Parkway, Henderson, Nevada. See id., ¶¶ 4 and 5.

3. As of the commencement of the Confirmation Hearing, the Center was 83% leased. Since the Confirmation Hearing, HRMC has secured one additional tenant and the renewal of a lease rendering the Center 95% occupied today, with the high lease occupation guaranteed through at least the end of 2014. See id. ¶ 6.

**B. HRMC's Secured Loan.**

4. On or about February 4, 2003, GMAC Commercial Mortgage ("GMAC") lent HRMC $4.43 Million (the "Secured Loan") and HRMC executed the Promissory Note (the "Secured Note") in favor of GMAC. See id. ¶ 7; Claim No. 2-1.

5. As security for the repayment of the Secured Note, HRMC and GMAC entered into: (i) a Deed of Trust and Security Agreement; (ii) an Assignment of Leases and Rents; (iii) a Replacement Reserve Agreement; and (iv) a Tenant Improvement and Leasing Commission Reserve Agreement (the "TI Reserve Agreement"). See id. ¶ 8.

6. Following a dispute over Lender's refusal to reimburse HRMC pursuant to the TI Reserve Agreement and despite HRMC's ability to continue to pay on the Secured Loan, on April 2, 2012, HRMC filed a voluntary Chapter 11 petition. See Abelson Decl. ¶ 9.

**C. HRMC's Reorganization Plan and Lender's Liquidation Plan.**

7. On August 20, 2012, Lender first filed its Liquidation Plan,[5] which provides for the sale of the Center. See ECF No. 68.

8. On October 10, 2012, HRMC filed *HRMC's Amended Plan of Reorganization* [ECF No. 115] which was subsequently amended by *HRMC's Second Amended Plan of Reorganization* [ECF No. 248] filed on September 13, 2013 (as amended, the "Reorganization Plan").[6]

---

[5] Lender subsequently amended the Liquidation Plan only to bold certain language at the Court's direction.

[6] Capitalized terms in this paragraph not otherwise defined herein shall have those meanings ascribed to them in the Reorganization Plan.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103876-001/5059966_4

4

9. On September 16 and 17, 2013, the Court held the Confirmation Hearing.

10. The Court heard closing arguments on October 22, 2013 and at that time, issued an oral ruling confirming the Amended Liquidation Plan.

### D. The Sale Motion.

11. On January 6, 2014, Lender filed the Sale Motion providing, for the first time, the terms of the anticipated auction of all of HRMC's assets (the "Assets") along with the Declaration of Danielle Steffen (the "First Steffen Decl.") stating solely that Ms. Steffen was the broker retained for the proposed sale. See ECF Nos. 367 and 368.

12. On January 17, 2014, HRMC deposed Ms. Steffen regarding the First Steffen Decl. See ECF No. 394.

13. On January 24, 2014, HRMC filed its opposition to the Sale Motion and included the declaration of Keith Harper setting forth that a reasonable marketing period to maximize the increasing value for the Center was six to eight months. See ECF Nos. 393 and 395.

14. On January 31, 2014, Lender filed its reply in support of the Sale Motion and included a second declaration of Ms. Steffen (the "Second Steffen Decl.") this time setting forth, for the first time, that Ms. Steffen "believe[d] that the appropriate marketing period for HRMC's Assets (as defined in the Motion) is six to eight weeks." See ECF Nos. 412 at ¶ 4.

15. During a status conference on February 3, 2014, HRMC previewed its intention to seek an evidentiary hearing given the importance of the sale procedures in maximizing the Center's value. See Feb. 3 Tran.,[7] at 9:20-10:13. The Court stated that it would consider a request for an evidentiary hearing at the hearing on the Sale Motion. See id.

16. At the hearing on the Sale Motion, HRMC again requested an evidentiary hearing as contemplated by LR 9017. See Feb. 6 Tran., at 31:22 - 32:3. HRMC emphasized that Lender had changed its procedures in its reply brief and submitted new evidence in the form of Ms. Steffen's declaration filed only four days before the hearing. As such, HRMC was entitled

---

[7] Relevant portions of the transcripts for the February 3 and February 6 hearings are attached to the *Declaration of Teresa Pilatowicz in Support of Motion Seeking a Stay Pending Appeal of Order Approving Order (A) Approving Sale Procedures, (B) Approving Retention of the Broker, and (C) Setting a Sale Hearing Date* filed concurrently herewith.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103876-001/5059966_4

5

to cross-examine Ms. Steffen's on the content of her new declaration pursuant to LR 9017(d)(4) and to present its own witnesses in response. See id.

17. On March 5, 2014, the Sale Motion was approved without an evidentiary hearing being conducted and without allowing HRMC to cross-examine Ms. Steffen or to present rebuttal evidence. See ECF No. 433.

18. On March 6, 2014, HRMC filed its *Notice of Appeal* [ECF No. 437] commencing an appeal (the "Appeal") from the Orders in the Bankruptcy Appellate Panel for the Ninth Circuit (the "BAP"), appeal number NV-1098.

## IV.
## LEGAL ARGUMENT

### A. Standard for Granting a Stay Pending Appeal.

The following four factors are considered in determining a motion for stay pending appeal: (i) whether the stay applicant has made a strong showing that it is likely to succeed on the merits; (ii) whether the appellant will be irreparably injured absent a stay; (iii) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (iv) where the public interest lies. See Nken v. Holder, 556 U.S. 418, 434 (2009). Of critical importance here, the balance of the harms shows immediate irreparable harm to HRMC and no harm to lender during the brief requested stay. Moreover, as shown below, HRMC has met its burden to on each four elements necessary for a stay pending appeal.

### B. HRMC Will Be Irreparably Injured If the Liquidation Sale Order Is Not Stayed.

To obtain a stay, HRMC must demonstrate is a "reasonable likelihood of future injury." Adelson v. Smith (In re Smith), 397 B.R. 134, 146 (Bankr. D. Nev. 2008). "An irreparable injury is one that is not remote or speculative, but instead is actual and imminent and for which money damages would not be adequate compensation." In re Station Casinos, Inc., No. 09-52477-GWZ, 2010 Bankr. LEXIS 5438, at *14 (Bankr. D. Nev. July 26, 2010). Moreover, the Ninth Circuit "require[s] a showing that 'an irreparable injury is the more probable or likely outcome' if the stay is not granted." In re Red Mountain Mach. Co., 451 B.R. 897, 900 (Bankr. D. Ariz. 2011) (citing Leiva-Perez v. Holder, 640 F.3d 962, 964 (9th Cir. 2011)).

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103876-001/5059966_4

6

In this Chapter 11 Case, the Court approved Lender's Sale Motion on March 5, 2013. The order approving the Sale Motion authorizes Lender to proceed with an auction of the Center on May 14, 2014. See ECF No. 433. However, the BAP has issued a briefing schedule that concludes on approximately May 30, 2014. Thus, if a stay is not granted, the Center will be sold before briefing is concluded.

Nevada law holds that land is unique and the loss of the same is irreparable. Acton v. Fullmer (In re Fullmer), 323 B.R. 287 (Bankr. D.Nev. 2014). This alone is sufficient to show irreparable harm. Further, if the Center is sold prior to a decision of the Appeal being issued, Lender will certainly argue that the Appeal is moot, which could render HRMC unable to reorganize even if it prevails in its Appeal and cause HRMC to lose its property. Such a result would be manifestly unjust. Even if the Appeal is not mooted by the sale, the sale of the Center and the subsequent undoing of that sale after the Appeal is resolved will nonetheless uproot the tenants and wreak havoc on the Center's operations and tenants.

Additionally, the tenants who have stood by HRMC for years are growing concerned over a possible sale (a sale based on the Amended Liquidating Plan, which HRMC anticipates will be reversed on Appeal) and considering whether to terminate their leases. These tenants, which have no indication as to their future and the Center in large part due to Lender's failure to adequately provide for the assumption or rejection of the Leases in the Amended Liquidation Plan, are starting to look at options for leasing other locations. Indeed, in order to renew their leases four tenants required a lease addendum providing that the tenant could terminate the lease if the Center was sold. See Second Abelson Decl. ¶ 3. This immediate and irreparable harm is threatening HRMC's business operations and future, all of which could be changed based on the outcome of the Appeal, and for which a stay would halt the harm. Therefore, a stay pending appeal should be granted.

C. **Other Interested Parties Will Not Be Harmed as a Result of the Stay.**

The purpose of a stay pending appeal is to preserve the *status quo*. See Vacation Vill., Inc. v. Clark Cnty., Nev., 497 F.3d 902, 914 (9th Cir. 2007) ("Rule 62(d) 'is a purely procedural mechanism to preserve the status quo during a stay pending appeal of a district court decision . . .

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103876-001/5059966_4

7

.'"); In re Victory Constr. Co., Inc., 37 B.R. 222, 226 (B.A.P. 9th Cir. 1984) ("The essence of the protection under [Bankruptcy Rule 8005], like the protection under Sec. 361, is the maintenance of status quo").

In the present case, no harm will result if the Orders are stayed pending the Appeal. Therefore, balancing the relative hardships weighs significantly in favor of granting this Stay Motion, because no parties will be harmed as a result.

1. *The Center's value has increased substantially since the Chapter 11 Case commenced and is expected to continue to increase in value.*

On February 22, 2013, the Court found that the value of the Center "for purposes of confirmation" was $3.95 million. See ECF No. 223 (the "Valuation Order"). In making the determination, the Court reviewed the appraisals of Keith Harper, HRMC's appraiser, who valued the Center at $4,250,000 as of October 17, 2012 (the "First Appraisal") and Daniel Crossen, Lender's appraiser, who valued the Center at $3,300,000 as of June 27, 2012. See id.

Generally, the Court accepted the First Appraisal with minor revisions.[8] Harper completed an updated appraisal as of January 17, 2014 (the "Second Appraisal"), which values the Center at $4,350,000, an increase of $100,000 over the First Appraisal. See Harper Decl. ¶ 6. Using the Court's two previous adjustments to the First Appraisal on the Second Appraisal (the decreased square footage and increased Cap Rate), the Center has increased from a minimum of $43,000 to a maximum of $266,720. See id. ¶¶ 15 and 22. As such, without question, the Center has increased in value during the Chapter 11 Case.

Furthermore, it is expected that rents with continue to increase in the entire Las Vegas valley and specifically in the Center's immediate area, further increasing the Center's value. Due to the decreased financing market for developments starting in 2007, there has been little to no new construction other than owner-occupied projects. It is predicted and expected that banks

---

[8] First, with respect to the sales comparison approach (the "Comp Approach"), the Court accepted Harper's square footage valuation of $150 (as opposed to Crossen's $125 valuation). However, the Court reduced Harper's determination regarding net rentable square footage from 27,560 to 26,627. Likewise, with respect to the Income Capitalized Approach (the "Income Approach"), the Court accepted Harper's net operating income ("NOI") calculation of $341,654, but increased Harper's Cap Rate from 8.0% to 8.6%. Ultimately, these two changes led to the $300,000 reduction in Harper's First Appraisal from $4,250,000 to $3,950,000 (and the $650,000 increase from Crossen's appraisal). See id.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103876-001/5059966_4

8

will continue their decreased new construction funding, other than owner occupied projects, until lease rates in HRMC's submarket hit $1.85-$2.00 (NNN) per square foot. Ultimately, this funding crunch will put pressure on the market and cause continued decreasing vacancy. As inventory shrinks and renewals increase, rates and occupancy will increase. See Drown Decl. ¶¶ 6 – 12. Consequently, Lender will not be harmed by a stay pending the resolution of the Appeal.

### 2. *The strong operations of the Center and HRMC's continued payment of adequate protection payments ensure Lender will not be harmed by a stay.*

Since the commencement of the Bankruptcy Case, HRMC has maintained its operations, paid for its own tenant improvement (rather than using its tenant reserve account held with Lender), and has continued to make $21,127 in monthly adequate protection payments to Lender for a total of $472,732.27 to date. See Second Abelson Decl. ¶ 4. HRMC's performance is expected to continue to increase in 2014 as HRMC's occupancy has increased from 83% as of the Confirmation Hearing to 95% today. The high lease occupation is guaranteed at least through the end of 2014. In fact, only one lease expires prior to 2015.

Given the strong operations (which accounts for continued monthly adequate protection payments to Lender), the Center's increasing value, stable tenants, and the likelihood of increasing rents and occupancy, Lender is and remains protected during the Appeal. The limited risk, if any, to Lender is strongly outweighed by the harm to HRMC – the loss of the Center through the Sale – thereby precluding any ability to reorganize prior to the BAP issuing a decision on the Appeal.

### D. **HRMC Enjoys a Strong Likelihood of Success on the Merits of Its Appeal.**

The Court committed clear error in approving Sales Procedures that were not designed to maximize the value of the Assets. Thus, the Orders are likely to be reversed on appeal.

### 1. *The Court erred in approving the Sale Motion because the Sale Procedures fail to maximize value.*

The Lender's Plan provides for the sale of the Center free and clear of liens pursuant to Section 363(f), which necessarily invokes the provisions of Section 363(b). In turn, Section

. . .

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103876-001/5059966_4

9

363(b) provides that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).

        a.      The required analysis under Section 363.

"The ultimate purpose [of a Section 363 sale] will be to obtain the highest aggregate bid." Collier 363.02[2]; see also In re Wilde Horse Enterprises, Inc., 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991) ("In any sale of estate assets, the ultimate purpose is to obtain the highest price for the property sold."). Typically, the standard for approval of a sale of property of the estate under Section 363 is: (1) whether there exists some articulated business justification for the proposed transaction; and (2) whether the sale is in the best interests of the HRMC, creditors and equity holders in light of applicable fiduciary duties thereto. See Walter v. Sunwest Bank (In re Walter), 83 B.R. 14, 19 (9th Cir. BAP 1988) (citing Institutional Creditors of Continental Airlines, Inc. (In re Continental Airlines, Inc.), 780 F.2d 1223, 1226 (5th Cir. 1986)). Because the Court conditionally approved Lender's Plan but did not otherwise approve the sale methods or procedures, the articulated justification prong was not at issue in the Sale Motion. Rather, at issue was the satisfaction of the best interests prong through the proposed sale procedures.

When analyzing the best interests prong, "the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders alike." Id. at 19-20. Among the factors considered by courts when approving a sale and the related sale procedures of a debtor's assets outside of the ordinary course of business include whether the sale price is fair and reasonable. See In re Slates, 2012 Bankr. LEXIS 5159, at *32 (9th Cir. B.A.P. Oct. 31, 2012) (citing In re Wilde Horse Enters., Inc., 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1069 (2d Cir. 1983)). In an asset sale, the "main responsibility, and the primary concern of the bankruptcy court, is the maximization of the value of the asset sold." In re Embrace Sys. Corp., 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995) ("In general, a debtor must demonstrate that the proposed purchase price is the highest and best offer."); In re Sonrisa Realty Partners, Ltd., 2011 Bankr. LEXIS 1733, at *6 (Bankr. S.D. Tex. 2011). The burden is on the seller to show that it has obtained the best possible price for the

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103876-001/5059966_4

10

asset sold. See In re Slates, 2012 Bankr. LEXIS 5159, at *32. In determining the best interests of parties-in-interest, courts may look to the following factors:

(i) Whether the assets are increasing or decreasing in value;

(ii) Whether the proposed sale will effectuate a de facto reorganization;

(iii) Whether the assets have been given adequate marketing; and

(iv) Whether adequate and reasonable notice of the sale was given.

See In re Work Recovery, 202 B.R. 301, 303-04 (Bankr. D. Ariz. 1996); In re Wilde Horse Enterprises, Inc., 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991); In re Conrad, 2012 Bankr. LEXIS 2324 (Bankr. S.D. Cal. 2012); In re Specialty Trust, Inc., 2010 Bankr. LEXIS 5960 (Bankr. D. Nev. 2010).

In connection with the first factor, courts should only authorize an expedited sale where delayed liquidation would substantially decrease an asset's value. The Second Circuit in In re Lionel Corp. detailed historical precedents for rushing sales of a HRMC's assets when declining in value, particularly where facts showed that such property was or would soon lose value, including handkerchiefs prior to a post-Christmas decline in value, brewer's equipment that would deteriorate in coming warm weather if not used, and a partially-constructed building whose revenue potential would suffer not only as a result of its deteriorating skeleton but an approaching World's Fair. See In re Lionel Corp., 722 F.2d at 1066-1070. Discussing this Lionel factor, courts have explained that "a sale should be approved when the court is faced with the situation of a so-called 'melting ice cube,' a sale that would prevent 'further, unnecessary losses.'" In re GSC, Inc., 453 B.R. 132, 165-166 (Bankr. S.D.N.Y. 2011) (citing In re Lehman Bros. Holdings, Inc., 445 B.R. 143, 180 (Bankr. S.D.N.Y. 2011)).

In connection with the third and fourth factors, while no bright-line test exists, a finding of adequate marketing must include a determination that marketing efforts "were extensive, comprehensive, and adequate to expose the availability of the [p]roperty" to the relevant markets. See, e.g., In re Shepherds Hill Dev. Co., 2000 Bankr. LEXIS 1808, at*15-16 (Bankr. D. N.H.); see also In re Wilde Horse, 136 B.R. at 841. As such, marketing efforts must aim to

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103876-001/5059966_4

11

maximize value of the value of the property sold by obtaining the highest aggregate bid through extensive, comprehensive, and adequate exposure to the appropriate market.

    b. <u>The Court failed to consider evidence necessary to determine whether the Sales Procedures were reasonable.</u>

  The Court declined to hear relevant evidence on the following issues: (a) the appropriate exposure period for the sale of the Assets; (b) the current value of the Assets; (c) whether the assets were increasing or decreasing in value; and (d) the allowed administrative claims and unsecured claim for Lender's fees, each of which require analysis to determine whether sales procedures should be approved. See In re Work Recovery, 202 B.R. at 303-04; In re Wilde Horse Enterprises, Inc., 136 B.R. at 841; In re Conrad, 2012 Bankr. LEXIS 2324; In re Specialty Trust, Inc., 2010 Bankr. LEXIS 5960. Not only was the determination to not allow such evidence inconsistent with substantial justice, such improper determinations prejudiced HRMC.

  As set forth above, Lender originally proposed a thirty day notice period for prospective purchasers in the Sale Motion. HRMC argued that at least six months was necessary. Lender then provided the late-filed Second Steffen Declaration that suggested six to eight weeks was appropriate. Without any evidence at the hearing on the Sale Motion, the "[C]ourt f[ound] that the 6 to 8 week period now proposed by Lender is reasonable." See Memorandum at 6:18-19. The Court found "extending the proposed marketing period for the property might or might not increase the sale price" but held that the Lender's claims and estate administrative claims made any recovery improbable. See id. at 7:2-10 (emphasis added). The Court erred in so finding because the Court failed to allow (despite HRMC's request for an evidentiary hearing) the presentation of relevant evidence to come to that conclusion. Specifically, the Court did not make any finding as to the value of the Assets or the value of the claims.

  First, the Court failed completely to analyze the total value of all of the Assets which, according the Sale Motion include:

> All property of the debtor and its bankruptcy estate (the "Estate") of any kind or nature as of the Effective Date of the Plan, including, without limitation, all of the debtor's and the Estate's real property, personal property, tangible property, intangible property, accounts, accounts receivable, goods, equipment,

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103876-001/5059966_4

12

> furniture, inventory, chattel paper, documents instruments, cash money, fixtures, improvements, easements, contract rights, general intangibles, rents, insurance proceeds, tax refunds, Causes of Action (as defined below), internet websites, intellectual property, trademarks, trade names, copyrights, patents, claims and rights of any Kind, wherever situated, together with the proceeds thereof, but excluding the proceeds of this sale.

For this reason alone, the Orders must be reversed.

Furthermore, with respect to the one single asset that the Court did value, the Center, the Court merely accepted a valuation "for the purposes of confirmation" from over a year ago finding that "[o]n February 22, 2013, this court determine that '(t)he fair market value of Debtor's Real Property, for purposes of plan confirmation is $3,975,000.'" See Memorandum at 3:14-15. Not only has the Center increased by more than $100,000 in value since the Valuation Order was entered, but the entire office submarket where the Center is located is increasing in value, which appreciation in value will continue throughout 2014 and beyond. See Harper Decl. ¶¶ 23-24; Drown Decl. ¶¶ 6-12. The Court's reliance on a valuation made "for the purposes of confirmation" that was a year old was improper.

Second, the Court did not take any evidence regarding the total claims against the estate noting only that Lender had filed claims that were subject to appeal. See Memorandum at 3:18-21. Therefore, while all parties certainly acknowledge HRMC's and Lender's fees in this Chapter 11 Case are significant, without knowing what they are and how they compare to the present value of the Property, the Court could not have made a determination that no exposure period would have generated any profits.

It was clear error for the Court – having disregarded the undisputed evidence of the current value of the Assets and having taken no evidence regarding the total claims to be paid by a sale of Assets – to determine that no sale would produce any profit and likewise find that the exposure period was therefore essentially irrelevant.

        c.    <u>The sixty day sale period is insufficient to maximize the value of the Assets.</u>

Since the Center is steadily appreciating in value, the mandates of Section 363 require a sufficient marketing period to maximize this increasing value, particularly where a sale in-

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103876-001/5059966_4

13

excess-of Lender's claim will result in a distribution to equity, or, at a minimum, reduce any potential deficiency. Lender initially proposed that this period be 30 days. See Sale Motion at p. 4; Sale Procedures ¶ 3. HRMC argued that this was unacceptable and that at least six months was necessary. See Opp., at 8:27-9:10; Sale Harper Decl. ¶¶ 25-28.[9] Lender's broker agreed that thirty days was too short, that at least six to eight weeks was necessary. See Second Steffen Decl. ¶ 4. The Court ultimately approved a sale in sixty days, a time frame that is simply too short. See ECF No. 432. This narrow marketing time unfairly reduces the potential pool of purchasers (who would need more than sixty days to complete due diligence and obtain financing) and minimizes the likelihood that the value of the Center will be maximized.

Lender's own broker has acknowledged that a sixty day sale period is not likely to produce a buyer. During her deposition, Ms. Steffen could recall two sales transactions in 2013 that involved sales prices in-excess-of $3.5 Million. In one sale, it took approximately 40 days to produce a qualified buyer, a subsequent 30-day due diligence period, and another 15 days to close the transaction. See Kozlowski Decl.,[10] Exhibit "A", at pp. 15:11-16:12. In the second sale, it took approximately 60 days to produce a qualified buyer, a subsequent 30-day due diligence period, and another 30 days to close the transaction. See id., at p. 17:2-18. Thus, each of these transactions involving an investment purchaser, not even an owner-occupier who traditionally need more time than large investment firms, took between 85 and 120 days to produce a buyer at a market sales price.

In addition to the fact that a marketing period of less than six months will fail to capture the maximum value of the Center as real estate values rise, there can be no dispute that the distress sale conditions of an auction meaningfully decrease the potential sale prices by between 25% and 50%. This fact was affirmed by this Court in its valuation determination wherein the Court explained that "I do believe that REO sales especially quick ones must be adjusted to consider a correct value." Ex. "B" to the Kozlowski Decl., p. 5:7-8. This statement was made in

---

[9] "Opp." refers to HRMC's opposition to the Sale Motion and the "Sale Harper Decl." refers to the declaration of Keith Harper filed concurrently therewith, ECF Nos. 393 and 395.

[10] The Kozlowski Decl. was filed on January 24, 2014 as ECF No. 394.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103876-001/5059966_4

14

response to Lender's appraiser's failure to make upward valuation adjustments to sales conducted under forced sale conditions, such as REO sales. Thus, by allowing an auction on only 60-days' notice with a minimum bid of $3.975 Million, Lender has effectively precluded any real likelihood that a competing bidder will be located and qualified, thereby failing to maximize the value of the Center.

> 2. *The Court erred in denying an evidentiary hearing on the Sale Motion, and specifically, not allowing HRMC to cross-examine Danielle Steffen.*

Pursuant to Bankruptcy Rule 9014(d) "[t]estimony of witnesses with respect to disputed material factual issues shall be taken in the same manner as testimony in an adversary proceeding." Fed. R. Bankr. P. 9014(d). Pursuant to "[t]he Federal Rules of Evidence and Rules 43, 44 and 44.1 of the Federal Rules of Civil Procedures apply in cases under the Code." See Fed. R. Bankr. P. 9017. Thus, in the context of a contested matter under Bankruptcy Rule 9014, trial testimony in open court is required to resolve disputed material factual issues. See Khachikyan v. Hahn (In re Khachikyan), 335 B.R. 121, 126 (B.A.P. 9th Cir. 2005).

While this jurisdiction adheres to the "alternate direct testimony procedure," as set forth in Local Rule 9017, which permits the submission of witness testimony through declaration in advance of the hearing, this procedure is not without limitations. First, Local Rule 9017 requires that an evidentiary hearing be conducted with live oral trial testimony for the purpose of cross-examination, unless stipulated by the parties and approved by the court. See LR 9017(e). Likewise, the "alternative directory testimony procedure" requires the submission of declarations that are intended to be submitted at trial not less than 14 days before the hearing on the contested matter. See LR 9017(d)(1). Therefore, although Local Rule 9017 is designed to assist in the presentation of testimony, it still requires the availability of declarants for cross-examination and the opposing parties' opportunity to cross-examine.

Furthermore, a party may not offer new evidence with a reply and deprive the opposing party of an opportunity to respond. See Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir.1996). In fact, due process requires an opportunity to cross-examine and present rebuttal evidence. See In re Tyrone F. Conner Corp., 140 B.R. 771, 782 (Bankr. E.D. Cal. 1992) (denying a party's

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103876-001/5059966_4

15

ability to cross-examine a declarant is violate of due process) (citing In re Aughenbaugh, 125 F.2d 887, 889 (3rd Cir. 1942) ("Not allowing the HRMC herein to present rebuttal evidence or cross-examine the witnesses making the factual contentions asserted in the declaration in support of that motion would be violative of the fundamental concept of procedural due process.").

Here, at the initial status conference on February 3, 2014, Debtor argued that it needed to present evidence, especially in light of the late-filed Second Steffen Decl. to which Debtor was entitled an opportunity to cross-examine and reply. At the February 6, 2014 hearing, the Debtor echoed its request. Despite these discussions regarding the need for evidence, the Court issued its Orders without allowing HRMC to cross-examine Ms. Steffen or to present rebuttal testimony.

The Court's decision to deny the presentation of any evidence on the contested Sale Motion was especially problematic because the Court appeared to accept the untimely Second Steffen Declaration which was not filed until January 31, 2014, only four business days before the hearing, after HRMC had deposed Ms. Steffen, and without opportunity for cross-examination. The Court's denial of HRMC's rights to cross-examine Ms. Steffen pursuant to Local Rule 9017 mandates reversals. Therefore, HRMC enjoys a strong likelihood of success on appeal.

### 3. *The Sale and Sale Motion was not properly noticed to interested parties.*

Pursuant to Bankruptcy Rule 6004(c),[11] "a motion for authority to sell property free and clear of liens or other interests shall be made in accordance with [Bankruptcy] Rule 9014 and shall be served on the parties who have liens or other interests in the property to be sold." See Fed. R. Bankr. P. 6004(c); see also Local Rule 9014(b) (requiring the moving party of a sale motion to serve both the motion and notice of hearing on the same in accordance with the Local Rules and the Federal Rules of Bankruptcy Procedure).

---

[11] Again, Section 363 and its associated Bankruptcy Rule 6004 is instructive here because Lender has set up its sale as a Section 363 auction. Notably, while the 363 sale process is generally viewed as being less strict than a sale through a plan of reorganization because, among other things, plan confirmation requires a disclosure statement, Lender has not satisfied even the lesser requirements of Bankruptcy Rule 6004. Here, no disclosure statement was provided *and* no notice pursuant to Bankruptcy Rule 6004 creating an illogical result where Lender is able to sell the Property with no notice at all.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103876-001/5059966_4

16

In the present case, contrary to the rules requiring service of both the Sale Motion, as well as the Sale Motion notice of hearing, the certificate of service indicates that Lender failed to properly serve the Motion along with the notice of hearing. See ECF Nos. 386-87. Accordingly, the parties-in-interest were not been properly noticed of the proposed sale and the related sale procedures. Thus, the Sale Motion, on this basis alone, should have been denied, as the parties-in-interest were deprived of notice of material aspects of the sale, the proposed sale procedures that will govern, among other things, the process for the assumption and rejection of the executory contracts and unexpired leases.

The Court found that the Sale Motion was not a sale motion pursuant to Bankruptcy Rule 6004(c) but rather, a motion seeking approval of procedures for a sale pursuant to the Amended Liquidation Plan. See Memorandum at 8:1-8. As a preliminary matter, it was Lender's own Sale Motion that claimed the predicate for the Sale Motion was "Rules 2002, 6004, and 9014." See Sale Motion at 4:7-10. The Court further noted that "[a]fter Lender's proposed procedures for the sale are approved, notice will be given to all interested parties, and they will have an opportunity to be heard." Id. at 8:6-8. It is unclear at what point the interested parties get to be heard. There are currently no more hearings on the Sales Procedures, they were approved. Certainly, should a party object after the auction, Lender will claim that the Sale Procedures were already approved. Furthermore, although a sale hearing is set, the objection deadline to the sale is only nine days after the auction with the hearing being held four days later. See ECF No. 445. What the Court has ultimately allowed is stay relief for the Lender with all the protections of Section 363 and Bankruptcy Rule 6004, without requiring compliance with Section 363 and Bankruptcy Rule 6004. This lack of notice and true meaningful opportunity to be heard regarding the Sales Procedures and sale simply does not satisfy the requirements of Rule 6004.

4. ***The Sale Procedures fail to adequately protect HRMC's tenants, as parties to unexpired leases and executory contracts.***

The sale procedures fail to adequately protect HRMC's tenants, as parties to unexpired leases and executory contract. Under Section 365(a)(1), an executory contract or unexpired lease of the debtor may not be assumed or rejected without approval of the court. See 11 U.S.C. §

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103876-001/5059966_4

17

365(a)(1); In re Gamma Fishing Co., Inc., 70 B.R. 949, 953 (Bankr. S.D. Cal. 1987) ("The cases which have considered the application of § 365 to an executory contract or lease have consistently decided that § 365(a) means what it says, i.e., that an express order of the judge approving an assumption or rejection is required."); see also RAF Fin. Corp. v. Resurgens Comms. Group, Inc., 1990 WL 145603 *4 (D.Colo. Sept. 27, 1990) ("Judicial approval of a motion to assume is mandatory, and if the requirements of § 365 have been met is for the bankruptcy court to determine. The debtor cannot unilaterally decided whether the tests of § 365(b)(1) have or have not been met, and certainly a non-debtor party has not authority to make such a determination. Court approval is an indispensable step in the process of assumption.) Such approval requirement also applied in the context of a plan. See 11 U.S.C. § 1123(b)(2). At least one court has found that "[b]y virtue of the reference in section 1123(b)(2) to section 365, one gleans that Congress did not intend to render the provisions of the latter a nullity by giving reorganizing debtor's carte blanche to assume unspecified leases and contracts free of the obligations of section 365, such as obtaining court approval." See In re Cole, 189 B.R. 40, 46 (Bankr. S.D.N.Y. 1995). Accordingly, based on prevailing authority, whether in the context of a plan or by motion, this Court must expressly approve the assumption of any of HRMC's executory contracts or unexpired leases before such action may be effectuated.

Lender proposed untenable Sale Procedures that failed to secure the necessary Court review and approval of the hypothetical assumption of any of HRMC's executory contracts and leases. Again, the Court did not take issue with these provisions because notice regarding tenants' treatment will be provided *after* the sale and tenants will then have approximately one week to analyze their treatment, determine the assuming party's ability to perform, consult with counsel, and object. See Memorandum, at 9:6-19. This limited time frame does not allow tenants to meaningfully participate and to meaningfully respond to any assumption or rejection.

Such procedure was further obfuscated by Lender's reference in the Sale Motion that the proposed Sale Order, which Lender improperly failed to attach to the Sale Motion for the consideration of parties-in-interest, shall provide for the assumption and assignment, or rejection of the executory contracts and unexpired leases is insufficient. See Sale Motion, at p. 9. The

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103876-001/5059966_4

18

inclusion of such provision in the Sale Order, without proper notice and hearing to the affected parties, would not only be premature but improper, unless, of course, Lender intended to condition approval of the sale on approval of the treatment of the executory contracts and unexpired leases, after appropriate notice and hearing.

E. **A Stay Supports the Public Interest in Achieving Reorganizations.**

In the context of bankruptcy proceedings, the "achievement of reorganization" is a "public interest worthy of protection." In re Station Casinos, 2010 Bankr. LEXIS 5438, at **15-16 (citing In re Fullmer, 323 B.R. 287, 305 (Bankr. D. Nev. 2005)). Granting HRMC a stay pending appeal is consistent with the public interest of preserving the ability of a party to exercise effectively its right to a meaningful review through a full and fair appeal process. See AT&T v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 n.8 (3d Cir. 1994). Here, a stay pending appeal is critical to enabling HRMC to achieve a reorganization that repays all of its creditors in full verses a liquidation that results in a significant deficiency and the loss of the Center.

Additionally, the tenants of the Center have indicated that they are likely to terminate their leases at the Center should the Center be sold. See Second Abelson Decl. ¶ 3. An empty center will harm the services tenants at the Center provide to the community, which currently includes significant medical care. Therefore, the public interest supports a stay being granted.

Moreover, the public has an interest in ensuring that due process is achieved in the bankruptcy system. Specifically, that when a party presents evidence for the first time on rebuttal, that a party is given its procedural due process rights to cross examine that witness and offer rebuttal evidence. See In re Tyrone F. Conner Corp., Inc., 140 B.R. 771, 782 (Bankr. E.D. Cal. 1992). As HRMC was deprived of its right to cross-examine Ms. Steffen and to present rebuttal testimony, due process was violated. A stay pending appeal ensures HRMC an opportunity to seek redress of the due process violation and therefore, the public interest weighs in favor of granting a stay.

. . .

. . .

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103876-001/5059966_4

19

## V. CONCLUSION

Based upon the foregoing, HRMC has satisfied all four elements required for a discretionary stay pending appeal under Bankruptcy Rule 8005. HRMC has shown, at the very least, substantial legal questions concerning the validity of the Court's entry of the Orders. Additionally, there can be no question that the balance of the remaining factors weighs decidedly in the HRMC's favor. If the stay is granted, Lender will not suffer any significant harm as Lender will continue to receive adequate protection payments, the Center is 95% leased, and is increasing in value. If the stay is not granted, however, HRMC will be irreparably harmed and Congress's intent for the Bankruptcy Code will be lost. Accordingly, this Court should stay the Order to preserve the status quo pending resolution of the Appeal.

Dated: March 31, 2014.

GORDON SILVER

By: _____
GERALD M. GORDON, ESQ.
TALITHA GRAY KOZLOWSKI, ESQ.
TERESA M. PILATOWICZ, ESQ.
*Attorneys for Debtor*

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103876-001/5059966_4

20