GORDON SILVER
GERALD M. GORDON, ESQ., NV Bar No. 229
E-mail:  ggordon@gordonsilver.com
TALITHA GRAY KOZLOWSKI, ESQ., NV Bar No. 9040
E-mail:  tgray@gordonsilver.com
TERESA M. PILATOWICZ, ESQ., NV Bar No. 9065
E-mail: tpilatowicz@gordonsilver.com
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Telephone (702) 796-5555
Facsimile (702) 369-2666
*Attorneys for Debtor*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

| In re:<br><br>HORIZON RIDGE MEDICAL & CORPORATE CENTER, L.L.C.,<br><br>Debtor. | Case No.: BK-S-12-13906-BTB<br>Chapter 11<br><br><br><br>Date:  May 27, 2014<br>Time:  1:30 p.m. |
|---|---|

## DEBTOR'S OPPOSITION TO THE SALE OF DEBTOR'S ASSETS

Horizon Ridge Medical & Corporate Center, L.L.C., a Nevada limited liability company ("Debtor"), by and through its attorneys, the law firm of Gordon Silver, hereby submits its opposition (the "Sale Opposition") to the proposed sale of Debtor's Assets, the relief for which was requested initially in *Bank of America, N.A., as Trustee's Motion for Orders (A) Approving Sale Procedures, (B) Approving Retention of the Broker, (C) Setting a Sale Hearing Date, and (D) Approving the Sale of the Debtor's Assets* [ECF No. 367] (the "Sale Motion").

This Sale Opposition is made and based on the memorandum of points and authorities provided herein, the declarations of Robey Tuate of Madame Et Monsieur, a tenant (the "Tenant Declaration"), and Talitha Gray Kozlowski (the "Kozlowski Declaration"), both filed concurrently herewith, the *Opposition to Bank of America, N.A., as Trustee's Motion for Orders (A) Approving Sale Procedures, (B) Retention of the Broker, (C) Setting a Sale Hearing Date, and (D) Approving the Sale of the Debtor's Assets* [ECF No. 399] (the "Sale Procedures Opposition") and the related supporting declarations of Keith Harper [ECF No. 401] and Talitha Gray Kozlowski [ECF No. 400], all of which are incorporated herein by this reference, the pleadings, papers, and other records on file with the clerk of the Court in connection with this

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103876-001/2297064_5.doc

1   Chapter[1] 11 Case, judicial notice of which is respectfully requested, and the argument of counsel
2   entertained by the Court at the time of the hearing on the Motion.[2]

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.
### INTRODUCTORY STATEMENT

Pursuant to the Sale Procedures, on May 14, 2014, Lender conducted its Auction of Debtor's Assets. Notwithstanding months of posturing by Lender inviting healthy bidding at the Auction on the premise that Lender had no interest itself in owning and operating the Center and preferred a cash buyer, after a sequence of twenty-one bids provided by Lender, Gateway Medical & Corporate Center ("Gateway"), and Dr. Shah, Lender, as Plan Administrator, deemed itself the Successful Bidder with a final "credit bid" of $4,420,000 (the "Credit Bid"). The Credit Bid exceeds the amount of Lender's Allowed Claim by more than $75,000 and represents a nearly $500,0000, or approximately 11%, increase in the value of the Center over the valuation of $3,975,000 previously determined by this Court.

Having concluded the Auction, Lender now seeks the second portion of the relief requested in the Sale Motion to which Debtor fervently objects: (i) approval of the Sale, including a finding that Lender acted in "good faith" pursuant to Section 363(m); and (ii) approval of the assumption and assignment of the Unexpired Leases. In light of the fact that Lender defeated confirmation of *Debtor's Second Amended Plan of Reorganization* [ECF No. 284] (the "Plan") by submitting Lender's representative and its expert's testimony that the Center would not increase in value over the Plan's 7-year term sufficiently to exceed Lender's Allowed Claim of $4,344,314.52, and therefore a refinancing or sale was not feasible at the end

---

[1] All references to "Chapter" and "Section" herein shall be to 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"); all references to a "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to a "Local Rule" shall refer to the Local Rules of Bankruptcy Practice of the U.S. District Court for the District of Nevada.

[2] Pursuant to Local Rule 9014.2, Debtor consents to entry of final orders or judgments by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103876-001/2297064_5.doc

2

of the 7-year Plan term,[3] Lender's conduct in the sale proceedings, and specifically its placement of the improper Credit Bid that exceeds its Allowed Claim, violates not only the Sale Procedures and Section 363(k), but also reveals Lender's lack of good faith. "[T]he conduct of bankruptcy proceedings not only should be right but must seem right."  See In re Bidermann Industries U.S.A., Inc., 203 B.R. 547, 549 (Bankr. S.D.N.Y.) (citing Knapp v. Seligson (In re Ira Haupt & Co.), 361 F.2d 164, 168 (2d Cir. 1966) (noting the declaration by Judge Henry Friendly); see also In re Yellowstone Mountain Club, LLC, 2009 WL 982233, *4 (Bktcy. D. Mont. Feb. 18, 2009).

To the disadvantage of those parties actually putting up hard cash, Lender with its improper Credit Bid of $4,420,000 - $75,000 in excess of its Allowed Claim - used the "monopoly money" to push beyond the figure to which it was entitled to unfairly etch out viable prospective purchasers. Once it became evident that neither the legal limit on Lender's credit bidding up to the amount of its Allowed Claim nor the economic sensibilities of such transaction would deter Lender from securing ownership of the Center, the other parties had no choice but to cease bidding.

Thus, in evaluating "good faith," this Court must also take into consideration that:

(i) Lender's Allowed Claim solely reaches $4,344,314.52 because Lender incurred *post-petition* attorney's fees and costs of $369,314.53 between the Petition Date and July 31, 2013, which was more than a month *prior to* the Confirmation Hearing. But for Lender's incurrence of such substantial attorney's fees in a single asset case, Lender's claim and credit bid would have indisputably been limited to less than $4 Million;

---

[3] In its findings and conclusions relating to denial of confirmation of Debtor's Plan, this Court stated:

> Although it is likely that the Reorganized Debtor will be able to obtain the operating capital it needs during the course of the Plan Period, it is very unlikely that the Debtor will be able to find a lender to refinance Lender's Notes at the end of the Plan Period. *Absent an unforeseen significant real estate property value recovery in the region, the Property will have a loan-to-value ratio of over 100% when the balloon payment on the Notes comes due.*

See ECF No. 429, at p. 33 (emphasis added). Yet, as Debtor and its expert predicted, the Center has already significantly increased in value. At the Auction, conducted within eight months of the Confirmation Hearing, bids by two parties were submitted in-excess-of Lender's Allowed Claim.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103876-001/2297064_5.doc

3

(ii) Lender contended that Debtor's Plan, which provided for the *full* repayment of Lender's claim over seven years, was not feasible because there was no likelihood that the value of the Center would exceed Lender's allowed claim of $4,344,314.52 at the end of the seven-year Plan term. Based on this testimony by Lender's representative and expert, the Court found that it was unlikely that the value of the Center would exceed $4,344,314.52; and

(iii) Lender repeatedly told this Court and Debtor that Lender preferred to obtain a cash payment of $4 Million at the auction, rather than to acquire the Center through a credit bid. Yet, despite two cash buyers appearing at the Auction and bidding *not only $4 Million, but $4.4 Million*, Lender sought to take title to the Center through an alleged "credit bid" of $4,420,000, over $75,000 in-excess-of Lender's Allowed Claim.

Such actions, in the aggregate, do not warrant a finding of good faith. Accordingly, among the other grounds upon which Debtor objected to the Sale Procedures, which objections are incorporated into this Sale Objection and remain on appeal, Debtor objects to the approval of the Sale as follows:[4]

A. Lender failed to comply with the Sale Procedures and the Bankruptcy Code, having submitted the improper Credit Bid that exceeds the amount of its Allowed Claim by more than $75,000. Lender's failure to comply with the Sale Procedures warrants denial of the approval of the Sale subject to holding a renewed auction at which time Lender's ability to credit bid should be limited expressly to the amount of its Allowed Claim.

B. Debtor also objects to a finding, for the purpose of Section 363(m), that Lender as the Successful Bidder, conducted itself throughout these sale proceedings in "good faith."

C. Finally, Debtor opposes the assignment of the Unexpired Leases on the basis that Lender as the Successful Bidder and proposed assignee has failed to comply with Section 365(f) in providing adequate assurance of future performance. As more fully set forth in the Tenant

---

[4] As Debtor has a number of appeals pending, including the appeal of Lender's claim for attorneys' fees, the appeal of confirmation of Lender's plan of liquidation, and the appeal of denial of confirmation of its own plan of reorganization, all in addition to its appeal of the Sale Procedures Order, the proceeding to consider approval of the Sale bears critically on Debtor's ability to proceed in this Bankruptcy Case. See BAP Nos. 13-1533, 14-1026, 14-1098, 14-1110, and 14-1111.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103876-001/2297064_5.doc

4

Declaration, Lender has failed to provide any information: (i) regarding whether Lender intends to maintain and operate the Center or to resell the Center to a presently unknown purchaser (the "Subsequent Purchaser"); (ii) whether Lender or the Subsequent Purchaser has the ability and willingness to perform in accordance with the Unexpired Leases or that Lender or the Subsequent Purchaser will retain on-site management, in addition to the MDL Group, to provide the managerial services previously provided by Debtor's owners; or (iii) whether Lender or the Subsequent Purchaser have the financial and professional resources and willingness to provide - without delay - the obligations of the landlord under the Unexpired Leases.

Accordingly, Debtor respectfully requests that the Court deny the balance of the relief requested in the Sale Motion.

## II.
## PERTINENT FACTS

A. **Lender's Allowed Claim Is $4,344,314.52.**

1. On July 23, 2012, Lender filed its proof of claim, claim number 2, asserting a claim for $4,122,364.40, plus, without limitation, fees, costs, expenses, and interest (the "Claim").  See Claim No. 2, Debtor's Claims Register.

2. On January 9, 2013, Debtor filed its objection to Lender's Claim [ECF No. 200] (the "Claim Objection"), which contained limited objections to Lender's Claim, including objections to Lender's assertion of unliquidated attorney's fees and costs.  See id. at p. 8.

3. Subsequently, on August 19, 2013, Lender filed *Bank of America, N.A. as Trustee's, Motion (I) for Allowance of Interest, Fees, Costs and Charges Pursuant to 11 U.S.C. § 506(b) and (II) to Otherwise Supplement Its Claim* [ECF No. 267] (the "Fee Motion"), which sought, among other relief, the allowance of post-petition attorney's fees and costs of $369,314.52 incurred for the period from the Petition Date through July 31, 2013.  See Fee Motion at p. 37.

. . .

. . .

. . .

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103876-001/2297064_5.doc

5

4.  Pursuant to the Court's findings and conclusions on the Fee Motion [ECF No. 313] (the "Claim Findings and Order"), the Court held that as of July 31, 2013, ***Lender's Allowed Claim totaled $4,344,314.52*** consisting of: (i) a secured claim in the amount of $3,975,000.00;[5] and (ii) an unsecured claim in the amount of $369,314.52. See Claim Findings and Order, ECF No. 313, at p. 4.

5.  Additionally, Lender filed a supplement to its claim in the amount of $279,752.01 for additional fees incurred through November 31, 2013 [ECF No. 365] (the "Claim Supplement"). The Court declined to issue a ruling on the Supplement pending the outcome of Debtor's appeal of the Claim Findings and Order.[6]

**B.  Lender's Credit Bid Improperly Exceeded the Amount of Its Allowed Claim.**

6.  On March 5, 2014, the Court entered its *Order Approving Sale Procedures, (B) Approving Retention of the Broker, and (C) Setting a Sale Hearing Date* [ECF No. 433] (the "Sale Procedures Order"), thereby approving the Sale Procedures established by Lender to conduct an Auction of Debtor's Assets. A copy of the Sale Procedures are attached to the Sale Procedures Order as Exhibit "A."

7.  Pursuant to the Sale Procedures Order, Lender conducted the Auction on May 14, 2014. Copies of the transcript recording the Auction proceedings and the related exhibits are attached to the Kozlowski Declaration as Exhibit "1."

8.  For the conduct of the Auction, the Sale Procedures included, among others, the following requirements:

> (a) each bidder must appear in person and fully disclose the identity of each entity that will be bidding for the Assets or otherwise participating in connection with such bid;
>
> . . .

---

[5] Following a hearing to determine the value of the real property securing Lender's claim, this Court, on February 22, 2013, entered its *Order Determining the Fair Market Value of Debtor's Real Property for Purposes of Plan Confirmation* [ECF No. 223] (the "Valuation Order"), which established the value of the Center at $3,975,000 for Confirmation purposes.

[6] Pending before the U.S. Bankruptcy Appellate Panel of the Ninth Circuit Court of Appeals (the "BAP") is BAP No.: NV-13-1533.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103876-001/2297064_5.doc

6

1
2
(c) each bid must be in cash and not contain any due diligence or financing contingencies of any kind, provided, however, that the Lender may credit bid up to the full amount of its allowed claims in the Bankruptcy Case;

(d) each bidder must indicate at the outset of the Auction what executory contracts and unexpired leases it will assume as part of its bid; the Lender intends to assume all executory contracts and unexpired leases;

(e) bidding shall commence at the amount of $3,975,000;

(f) bidders may then submit successive bids in an increment of at least $50,000.00 higher than the bid at which the Auction commenced and then continue in minimum increments of at least $10,000.00 higher than the previous bid;

(h) the Auction shall continue until the Plan Administrator determines that there have been no bids submitted within a reasonable time after the previous bid, at which point the last submitted bid shall be deemed the winning bid (the "Successful Bid");

See Sale Procedures, at pp. 2-3.

9.  The three parties participating in the Auction included Lender, Gateway, whose managing member is Dr. Abelson, and Dr. Russell J. Shah.[7]  See Exs. 3-5 to the Auction Transcript.  Lender solely appeared at the Auction through John Weiss, who also served as the Plan Administrator conducting the Auction.[8]

10.  Prior to the commencement of the bidding process, counsel for Lender, as a preliminary matter, established that, pursuant to the Sale Procedures, "[e]ach bidder has certified that its bid will be in cash . . . , ***provided that the lender may credit bid up to the full amount of its allowed claims in the bankruptcy case***."  See Auction Transcript, at p. 7, ln. 5-9 (emphasis added).

11.  Lender provided that it would assume and assign all of Debtor's Unexpired Leases.  See Ex. 3 to Auction Transcript.

. . .

. . .

---

[7] Dr. Shah was represented at the Auction by Amy Ogden, who is the same broker retained by Lender to co-list the Center with Danielle Steffen.  Danielle Steffen also appeared at the Auction as Lender's broker.

[8] Mr. Miller, Lender's representative, was not present at the Auction.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103876-001/2297064_5.doc

7

12. Pursuant to the Sale Procedures, the bidding for the Assets was commenced by Lender with an initial bid of $3,975,000. See Auction Transcript, at p. 8, ln. 23-25. According to the Bidding Record, twenty-one bids were placed during the course of the auction. Lender's bids commencing with the $3,975,000 credit bid continually pushed up the bidding and edged out both Gateway and Dr. Shah with a final "credit bid" of $4,420,000. Mr. Weiss, the Plan Administrator and Lender's representative at the Auction, determined that Lender was the Successful Bidder with a ***successful "credit bid" of $4,420,000, more than $75,000 in-excess-of Lender's Allowed Claim.*** See Ex. 6 to Auction Transcript.

13. Prior to Lender's "Credit Bid" of $4,420,000, Gateway had bid $4,400,000 and Dr. Shaw had bid $4,100,000. Once it was clear that Lender was "credit bidding" in-excess-of its Allowed Claim, both Gateway and Dr. Shaw ceased bidding. See id.

**C.    Lender Now Seeks to Capitalize on Its Prior Unfair and Skewed Representations of Market Value.**

14. Central to Lender's attack on confirmation of Debtor's Plan was Lender's mischaracterizations of the Center's loan-to-value ("LTV") ratio at the end of the Plan term, which were premised on a stagnating or declining real estate market in Las Vegas, despite Debtor's evidence of improving real estate values and the acknowledgments on cross-examination of the improved market by Mr. Miller[9] and Lender's expert, Mr. Bierman. See Confirmation Trans. Sept. 16, 2014, Vol. II, at p. 29, ln. 11-16, 30, ln. 11-15, Exhibit 3 to the Kozlowski Declaration.; Confirmation Trans. Sept. 17, Vol. II, at p. 112, ln. 2-8, Exhibit 4 to the Kozlowski Declaration.

15. Relying on the valuation of the Center that had been conducted by the Court one year prior, Lender contended that Debtor's balloon-payment was an illusory exit plan that would result in disaster for Lender speculating that to achieve the "appropriate" LTV for a loan refinancing in seven years, the Center would need to experience appreciation over such time by

---

[9] Mr. Miller states that ". . . certainly the real estate market has improved and even in – in (indiscernible) office in Las Vegas has improved." See Confirmation Trans. Sept. 16, 2014, Vol. II, at p. 75, ln. 11-13, Exhibit 2 to the Kozlowski Declaration.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103876-001/2297064_5.doc

8

30-35%. Lender completely ignored that less than an 11% increase was necessary to obtain a sale of the Center at the Plan's term. See Confirmation Trans. Sept. 16, 2014, Vol. II, at p. 33, ln. 5-25, 34, ln. 1-11, Exhibit 2 to the Kozlowski Declaration.

16. In light of the final bid at $4,420,000, in the eight months since the conclusion of the confirmation proceedings, the Center has experienced an increase in value that exceeds 11%. Given such increase in value in less than one year, if such calculations were performed today, assuming a yearly increase in value at 3% (an overall increase by 20%), the value of the Center at the conclusion of the Plan would exceed $5.436 Million providing a substantial equity cushion more than adequate to accommodate hypothetical LTV of 70% or less to effectuate a traditional loan refinancing. See Kozlowski Declaration ¶ 5.

17. To discredit the evidence before it, Lender's counsel engaged in hyperbole asking Mr. Miller a series of hypothetical questions with the intent to elicit responses depicting Lender as the overdramatized "loser" in Debtor's Plan notwithstanding the contemplated treatment requiring payment in full. See Sept. 16, 2014, Vol. I, at p. 35, ln. 12-25, 36, ln. 1-25, Exhibit 2 to the Kozlowski Declaration.

18. Specifically, Mr. Weiss, as he spins a gambling motif, states "[s]o if [Debtor's] wrong, you lose, and if they're right, they win." See id. at p. 35, ln. 15-16. In response, Mr. Miller asserts that Debtor's plan effectively results in Debtor "spending the house money." See id. at p. 35, ln. 17-19.

19. Also in support of Lender's contentions that Debtor's Plan lacked feasibility, Lender proffered testimony by Mr. Bierman, who stated that "to essentially bet that the full amount of the loan is going to be paid off at the end of seven years with that kind of appreciation I think is . . . *extremely risky at best."* See Conf. Trans. Sept. 17, 2014, Vol. II, at p. 112, ln. 13-16 (emphasis added); see also ECF No. 306, at p. 12.

20. In the course of the sale proceedings, Lender continued with the same tactic. In a self-serving statement designed to counter against extending the marketing time, Danielle Steffen, Lender's broker, testified on January 31, 2014 that "[e]ven though the real estate market may be improving to the extent that there is higher volume of sale and lease transactions, *this*

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103876-001/2297064_5.doc

9

*does not translate to an increase in sales or lease prices. Volume is increasing because properties are discounted."* See ECF No. 412, ¶ 10 (emphasis added).

### D. **Lender Repeatedly Advised Debtor and This Court that It Would Prefer to Sell the Center, Rather than Take Ownership of the Center.**

21.    At the February 6, 2014 hearing to consider the Sale Procedures, Lender's counsel stated:

> We, of course, as we've said many times, welcome the opportunity to bring the debtor and its principals into this process.
>
> If they would like to bid cash, we're happy to take their money. If they would like to find a buyer or find a partner to bid with them, we're happy to take any money that comes in.

See February 6, 2014 Hearing Transcript, at p. 28, ln. 10-16, Exhibit 3 to the Kozlowski Declaration.

22.    At the March 21, 2014 hearing to consider Debtor's motion to stay the Sale Procedures Order pending appeal, Lender's counsel made the following representations:

> Whether the property can sell at anything near the amount of money that's currently owed is doubtful, but we're willing to try, and we'd be very happy if it did.
>
> We'd be very happy if the borrower's principals who have so much time and effort put into this property could borrow money and buy it themselves. We would much, much rather have money than real estate.

See March 21, 2014 Hearing Transcript, at p. 62, ln. 7-13, Exhibit 4 to the Kozlowski Declaration.

23.    In that same proceeding, Lender's counsel further stated:

> I'm happy to hear that Mr. Abelson is able to come up with a lender who – or a loan broker who may have some interest from lenders to lend 3.2 million dollars.
>
> If Mr. Abelson and Mr. Patel can put some more money together of their own, some equity money, to buy this property back and can submit a fulsome bid that tops the others at the sale, we'll take it.

See id. at p. 64, ln. 22-25, 65, ln. 1-3.

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103876-001/2297064_5.doc

10

24. Contrary to these representations, Lender submitted a bid in-excess-of its Allowed Claim to ensure that it acquired the Center. This is the same Center Lender contended would not increase in value above the Court's $3,975,000 valuation when seeking to defeat confirmation of Debtor's Plan.

## III.
## LEGAL ANALYSIS

### A.  Lender's Credit Bid Improperly Exceeded the Amount of Its Allowed Claim.

A filed claim is an allowed claim unless an objection to the claim is filed. See 11 U.S.C. § 502(a). Under Section 363(k), a creditor may bid its lien that secures an allowed claim, unless the Court orders otherwise for "cause." See 11 U.S.C. § 363(k). "[W]here ... the statute's language is plain, the sole function of the courts is to enforce it according to its terms." United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241 (1989) (internal citation omitted).

In the present case, noting that the language of the statute plainly provides the setoff by a lienholder only up to the amount of such lienholder's "allowed claim," the maximum amount that Lender was allowed to credit bid at the time of the Auction was $4,344,314.52.[10] However, in an improper effort to outbid the other bidders, and reduce the Auction process to a sham sale, Lender asserted a final bid of $4,420,000 – a bid that exceeds Lender's Allowed Claim by more than $75,000. Accordingly, the alleged Successful Bid submitted by Lender does not constitute a valid bid, and the Sale may not be approved.

Debtor anticipates that Lender will argue that the amount of its Credit Bid is justified based on the face value of its claim, which Lender contends is substantially higher than the amount of its Allowed Claim – the subject of which remains disputed by Debtor and undetermined by this Court. Assuming that such argument is made, which argument belies the plain language of the statue as set forth above, "cause" pursuant to Section 363(k) exists to limit Lender's right to credit bid to the amount of its Allowed Claim. "Cause" is not defined in the Bankruptcy Code, but has been interpreted to include where a creditor's claim or lien is the

---

[10] This Court should recall that of the $4,344,314.52, $369,314.52 is subject to appeal. To the extent that the BAP reverses the Claim Order, Lender's claim would be considerably less than $4,244,314.52.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103876-001/2297064_5.doc

11

subject of a "bona fide dispute." See, e.g., In re Akard St. Fuels, L.P., 2001 WL 1568332 (N.D. Tex. 2001) (denying secured creditor's right to credit bid where its liens were the subject of a bona fide dispute); In re McMullan, 196 B.R. 818 (Bankr. W.D. Ark. 1996) (denying secured creditor's right to credit bid where the validity of its liens was in question). While the Bankruptcy Code has not defined "bona fide dispute," courts applying Section 363(f)(4) have determined that a "bona fide dispute" exists where there is "an objective basis for either a factual or legal dispute as to the validity of the asserted interest." In re Merit Grp., Inc., 464 B.R. 240, 253 (Bankr. D.S.C. 2011) (citations omitted). In the Ninth Circuit, courts have determined that a bona fide disputed regarding a claim under Section 303(b) exists unless such dispute has been reduced to final judgment. See In re Marciano, 446 B.R. 407, 422 (Bankr. C.D. Cal. 2010).

Here, to the extent that Lender attempts to argue any justified basis for asserting a credit bid in-excess-of its Allowed Claim, such argument must be disregarded. The plain language of the statute provides Lender the opportunity to place a credit bid only up to the amount of its Allowed Claim. The remaining balance of Lender's claim is the subject of a bona fide dispute between Debtor and Lender. As such, Lender could not "credit bid" any more than $4,344,314.52 (which ultimately may be reduced to less than $4,000,000). Yet, Lender entered alleged "credit bids" in-excess-of $3,344,314.52. Consequently, Debtor objects to approval of the Sale, and calls for a renewed auction[11] at which Lender's ability to credit bid is limited to the amount of its Allowed Claim.

**B.    Lender's Conduct in the Sale Process and the Auction Does Not Warrant a Finding of Good Faith.**

In the Motion requesting approval of the Sale, Lender has requested a finding of "good faith" with respect to the Auction and Sale transaction for the purpose of Section 363(m). See Motion, at pp. 7-8. However, Lender is not entitled to a finding of good faith.

. . .

---

[11] The Court cannot rely on the Auction results because both cash bidders ceased bidding when it became apparent that Lender failed to comply with the limit on its credit bid.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103876-001/2297064_5.doc

12

The purpose of a good faith finding is to facilitate the operation of Section 363(m), which provides a safe harbor for purchasers of a debtor's property when the purchase is made in "good faith." See 11 U.S.C. § 363(m). Specifically, Section 363(m) provides that:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m); see also Ewell v. Diebert (In re Ewell), 958 F.2d 276, 279 (9th Cir. 1992). Section 363(m), among other purposes, serves to encourage good faith transactions. See Abbotts Dairies, Inc., 788 F.2d 143, 149-50 (3rd Cir. 1986), Hoese Corp. v. Vetter Corp. (In re Vetter Corp.), 724 F.2d 52, 54-55 (7th Cir. 1983). As no definition of "good faith" exists in the Bankruptcy Code,

> [t]he requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchase and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

See In re Suchy, 786 F.2d 900, 902 (9th Cir. 1985) (quoting Prichard v. Sherwood & Roberts, Inc. (In re Kings Inn, Ltd.), 37 B.R. 239 (B.A.P. 9th Cir. 1984) (internal citations omitted).

Here, most critically, to the disadvantage of those parties actually putting up hard cash, Lender, with its improper Credit Bid of $4,420,000, which exceeded the amount of its Allowed Claim by more than $75,000, unfairly chilled the bidding process and etched out the two viable cash bidders. In declining cash bids that exceeded the amount of its Allowed Claim and continuing to "credit bid" beyond its actual Allowed Claim, it became evident that Lender would not be deterred by either the legal limit of its Allowed Claim amount or the economic sensibilities of the transaction. Thus, the other parties had no choice but to cease bidding. Such intentional disadvantage to the other bidders at the Auction certainly does not warrant a finding of Lender's good faith in the sale proceedings. This is particularly true here where Lender will certainly seek to use the finding of good faith to moot Debtor's fully briefed appeals.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103876-001/2297064_5.doc

13

This Court should also not lose sight of the fact that Lender increased its claim by over $350,000 due to attorney's fees incurred *prior to* the confirmation hearing. Then, at the Confirmation Hearing, Lender's representative and expert testified that Debtor's Plan – providing for full payment of Lender's claim over seven years – was not feasible because the Center's value would not exceed $4,344,314.52 over the next seven years and therefore a sale or a refinancing of the Center was unrealistic. Following the Confirmation Hearing, Lender repeatedly invited Debtor and/or its principals to appear at the Auction and bid over the $3,975,000 to salvage the Center and equity's +15-year and over $750,000 investment in the Center. Lender's counsel reiterated time and again that Lender, having no intention of becoming a property owner unless no other bidders appeared at the Auction, would happily hand back the Center to Debtor if it or its principals could bid over $4,000,000. However, Lender did exactly the opposite at the Auction rejecting the cash bids of both Dr. Shaw and Gateway, which bids exceeded Lender's Allowed Claim. Such outcome is irreconcilable with the representations made by Lender throughout these proceedings, and ultimately, has led to the incomprehensible result where Debtor, a victim initially of malpractice, becomes further wronged through Lender's abuse of process in accomplishing a species of stay relief to capitalize on the increased value of the Center. Accordingly, Lender's conduct, in the aggregate, does not merit a finding of good faith.

**C.     Lender as Successful Bidder Failed to Provide Adequate Assurance of Future Performance.**

Pursuant to Section 365(f), a trustee may not assign an executory contract or unexpired lease unless such contracts and leases are assumed pursuant to Section 365(b)(1), and further the counterparties to such contracts and leases are provided "adequate assurance of future performance under such contract or lease" by the assignee. See 11 U.S.C. § 365(f)(2)(B). Generally speaking, the Bankruptcy Code contains no definition of "adequate assurance of future performance." In re UAL Corp., 635 F.3d 312, 323 (7th Cir. 2011) (there is no general definition of "adequate assurance" in the Code … We develop the meaning based on the facts and circumstances of each case.); see also, In re Washington Capital Aviation & Leasing, 156

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103876-001/2297064_5.doc

14

1  B.R. 167, 175 (Bankr. E.D. Va. 1993) (denying debtor-lessor's assignment of lease on the basis
2  that assignee failed to adequately assure future performance in providing only a two-page
3  "balance sheet and statement of income and retained earnings" as evidence of its financial
4  condition). Adherence to the requirements of Section 365 are required even to the extent that
5  assumption or rejection is contemplated in the context of a plan, as Section 1123(b)(2) expressly
6  subjects the assumption or rejection of contracts or leases to the provisions of Section 365. See
7  11 U.S.C. § 1123(b)(2); see also In re Cole, 189 B.R. 40, 46 (Bankr. S.D.N.Y. 1995).

8  In the present case, Lender has failed to meet the requirement under Section 365(f)(2)(B)
as it has failed to provide *any* assurance of future performance of the Unexpired Leases. One cannot even argue the adequacy of such demonstration because the sale proceedings have been entirely devoid of any information as to Lender's future performance of the Unexpired Leases. As more fully set forth in the Tenant Declaration, Lender has failed to provide any information: (i) regarding whether Lender intends to maintain and operate the Center or to resell the Center to Subsequent Purchase; (ii) whether Lender or the Subsequent Purchaser has the ability and willingness to perform in accordance with the Unexpired Leases or that Lender or the Subsequent Purchaser will retain on-site management, in addition to the MDL Group, to provide the managerial services previously provided by Debtor's owners; or (iii) whether Lender or the Subsequent Purchaser has the financial and professional resources and willingness to provide - without delay - the obligations of the landlord under the Unexpired Leases.

Lender's blatant attempts to avoid the requirements of Section 365(f)[12] in providing absolutely no assurance of its future performance under the Unexpired Leases must be prevented. Accordingly, the assignment of the Unexpired Leases to Lender should be denied.

23  . . .
24  . . .
25  . . .
26  . . .

---

[12] Adherence to Section 365(f) is required even in the context of assumption and assignment through the context of a plan.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103876-001/2297064_5.doc

15

## IV.
## CONCLUSION

Based on the foregoing authority and analysis, Debtor respectfully requests that the Court deny the balance of the relief requested in the Sale Motion, including denying approval of the Sale, denying a finding of good faith conduct in the course of the sale proceedings by Lender, and denying approval of the assignment of the Unexpired Leases for failure to provide adequate assurance of future performance by Lender. Debtor seeks such other and further relief as the Court deems just and proper.

DATED this 22nd day of May, 2014.

                                GORDON SILVER

                                By: */s/ Talitha Gray Kozlowski*
                                     GERALD M. GORDON, ESQ.
                                     TALITHA GRAY KOZLOWSKI, ESQ.
                                     TERESA M. PILATOWICZ ESQ.
                                     3960 Howard Hughes Pkwy., 9th Floor
                                     Las Vegas, Nevada 89169
                                     Attorneys for Debtor

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103876-001/2297064_5.doc

16